RAILWAY COMPANY *v.* WILSON COUNTY.

(*Nashville.* February 10, 1891.)

1. COUNTY COURT. *Jurisdiction and powers of, purely statutory.*

County Courts possess no jurisdiction or powers but those conferred by statute.

Constitution cited: Art. VI., Sec. I.

Code construed: § 207 (M. & V.); § 127 (T. & S.).

Case cited: Pope *v.* Phifer, 3 Heis., 682.

2. SAME. *No statute authorizes release of county taxes on railway property.*

No statute has, in terms or by implication, authorized County Courts to exempt or release, upon any pretext or consideration whatever, the property of a railway company—consisting of its road-bed, rolling-stock, etc.—from its just proportion of taxation for county purposes.

Code construed: §§ 459, 462, 466–472, 562, 565–567, 569, 1322 *et seq.*, 1357 *et seq.*, 1423–1433, 1439, 1465–1512, 1513–1534, 4985–4990 (M. & V); §§ 402, 404, 408–414, 483, 489, 490, 491*a*, 1182 *et seq.*, 1241–1251, 1257, 1277 *et seq.*, 1299 *et seq.*, 4206–4217 (T. & S.).

Cases cited and approved: Hunter *v.* Campbell County, 7 Cold., 55; Grant *v.* Lindsay, 11 Heis., 667; Wood *v.* Tipton County, 7 Bax., 112; Cannon County *v.* Hoodenpyle, 7 Hum., 146; Obion County *v.* Marr, 8 Hum., 634; Carey *v.* Campbell County, 5 Sneed, 516; Turnpike Co. *v.* Davidson County, 14 Lea, 74; Williams *v.* Taxing District, 16 Lea, 535.

3. SAME. *Same. Exemption void though declared to induce non-resident to build road.*

And such release or exemption of railway property from county taxation is none the less *ultra vires* and void because it was offered as an inducement for the location and building of a railroad, which was accordingly constructed by non-residents, resulting in great benefits, in a general way, to the county.

4. SAME.   *Legislature has not unlimited power to authorize release of railway property from county taxation.*

The Legislature has not unlimited power, under our Constitution, to authorize the County Courts to exempt or release railway property from taxation for county purposes.

Constitution construed: Art. II., Sec. 28; Art. XI., Secs. 9, 10.

Cases cited and approved: Railroad *v.* Gaines, 3 Tenn. Ch., 611; Ellis *v.* Railroad, 8 Bax., 530; Chattanooga *v.* Railroad, 7 Lea, 576, 577; Railroad *v.* State, 8 Heis., 789, 796; Franklin County *v.* Railroad, 12 Lea, 547.

---

FROM WILSON.

---

· Appeal from Chancery Court of Wilson County. GEORGE E. SEAY, Ch.

J. J. TURNER and B. J. TARVER for Railway Company.

R. P. McCLAIN for Wilson County.

CALDWELL, J.   This is a bill by the Nashville and Knoxville Railroad Company against Wilson County and her revenue officers, to restrain the collection of taxes.

On October 3, 1886, the County Court of Wilson County, in quarterly session assembled, passed a resolution whereby it agreed to release from taxation for county purposes all the property of the complainant, then or thereafter in that county,

for the period of fifteen years, beginning with January 1, 1887.

This action was taken, as recited in the resolution, "in order to induce" the complainant "to locate and build its proposed railway from Lebanon, Wilson County, east to Gordonsville, Cookeville, and then along the Cumberland Mountains, across the Cincinnati Railroad, to Knoxville, Tenn.; and because of the great advantages that will accrue to Wilson County from the construction and operating of said through line of railroad." It is alleged in the bill that complainant, "induced in part by this act" of the county, has, at great expense, located, built, and equipped, and is now operating, its line of railway from Lebanon eastward, as contemplated, about forty-five miles, and that the work of construction is still progressing; that the county of Wilson has thereby been greatly benefited in the enhancement of the taxable value of lands to the extent of $160,000, in the great reduction of the cost of transportation, etc.

It is further alleged that, notwithstanding the said agreement of the county, and the advantages received and to be received by it from the construction and operation of complainant's railway, the county now claims from complainant the sum of $950.15, as taxes for county purposes for the year 1889, and has caused certain property belonging to complainant to be seized and advertised for sale to pay said sum.

Relying on the release of the County Court,

complainant claims immunity from taxation by the county for the period stated, and seeks an injunction to restrain the sale.

The defendants demurred to the bill, and for cause said that the action of the County Court in agreeing to release complainant's property from taxation for county purposes, was illegal, null, and void, because *ultra vires* and unconstitutional.

The demurrer being sustained and the bill dismissed, the complainant appealed.

Though the County Court existed, in some form, in North Carolina before the organization of this State, and may be said to have been recognized by our Constitution of 1796 as one of the institutions of the State then existing (*Pope* v. *Phifer*, 3 Heis., 682), it is, nevertheless, a creature of statute merely, possessed alone of statutory jurisdiction, and wholly wanting in common law powers.

By the Constitution of 1796, all judicial power was vested "in such superior and inferior Courts of law and equity as the Legislature shall, from time to time, ordain and establish;" by the Constitution of 1834, "in one Supreme Court, and in such inferior Courts as the Legislature shall, from time to time, ordain and establish;" and by the Constitution of 1870, "in one Supreme Court, and in such Circuit, Chancery, and other inferior Courts as the Legislature shall, from time to time, ordain and establish." Con. (1870), Art. VI., Sec. 1.

By statute "a Court is established in each

county of this State, composed of the Magistrates of the county, for the dispatch of probate and other business *intrusted to it,* to be called the County Court." Code (M. & V.), § 207.

The powers "intrusted to" the County Courts thus established, emanate from the Legislature alone; hence, the measure and limit of those powers are to be found in the statutes, and when a power claimed for them is not conferred by some statute it must be held not to exist.

Many sections of the Code have been cited by learned counsel of complainant as, indirectly if not directly, conferring authority to take the action taken by the County Court of Wilson County in the case before us. We notice all of them briefly. County Courts have general statutory powers concerning public roads, ferries, and bridges (Code, §§ 1322 *et seq.,* 1357 *et seq.,* 1423–1433, 4985); as to turnpikes and water-courses (Code, §§ 1465–1512, 1513–1534, 4985); as to control, erection, and disposition of public county buildings (Code, §§ 466–472, 4986); as to levy of tax to build court-house, jail, or public office for county purposes (Code, § 4985, last sentence); as to building of free bridge and paying for same with funds on hand or by special tax (Code, § 4990); as to appropriation of money for seventeen enumerated purposes, but not otherwise, unless expressly provided by law (Code, §§ 4987, 4988); as to exemption of certain poor persons from working on public roads and payment of poll-tax (Code, §§ 2127, 4986); as to permitting

certain poor persons to hawk and peddle without license (Code, §§ 2126, 4986).

Confessedly none of these confer the power in question directly, and it is clear that none of them confer it indirectly. All the objects embraced are so well defined by the language of the statutes themselves that no room is left for the inclusion of a different subject by intendment. The authority to release from the burden of taxation is distinctly confined to poll-tax and privilege-tax, with only poor persons as beneficiaries thereof. Code, §§ 2126, 2127, and 4986.

Section 1439 of the Code is in the following language: "The County Court may provide for making such private and local improvements, within the limits of the county, as are contemplated by the ninth and tenth sections of the eleventh article of the Constitution, under such restrictions, limitations, and conditions as in its discretion shall seem right and proper; such as toll-bridges, causeways across bottoms, fish-traps, mill-dams, ferries, public roads, and the like."

It is obvious, as has been twice correctly decided, that this provision has no reference to works of public improvement, to be undertaken, made, and paid for by the county; but only to private enterprises of more or less public convenience. *Hunter* v. *Campbell County*, 7 Cold.; 55; *Grant* v. *Lindsay*, 11 Heis., 667.

And it is quite as manifest from the language used both in the Code as above quoted and in the

original Act (1835, Ch. 29; Car. & Nich., 203), that it was not in the legislative mind to confer upon County Courts authority to release the property of railroad companies from the common burden of taxation. If such authority exists, it must be found in some other enactment.

Again, " every county is a corporation, and the Justices in the County Court assembled are the representatives of the county, and authorized to act for it." Code, § 459. And " each county may acquire and hold property for county purposes, and make all contracts necessary or expedient for the management, control, and improvement thereof, and for the better exercise of its civil and political powers; may make any order for the disposition of its property, and may do such other acts and exercise such other powers as may be allowed by law." Code, § 462.

It is insisted that, under these provisions, the County Court of Wilson County was authorized to make the contract or agreement in question; that, being the fiscal agent of the county, and having a portion of the sovereign power of the State, it had the power to surrender the right to tax the complainant's property to secure for the people of the county the greater advantage of a well-equipped railway.

We concede that, in the exercise of their powers with respect to public roads and the levy of taxes for county purposes, County Courts are properly said to act as miniature Legislatures, and to

perform legislative or municipal rather than judi-
cial functions. *Wood* v. *Tipton County*, 7 Bax.,
112; *Grant* v. *Lindsay*, 11 Heis., 651; 7 Hum.,
146; 8 Hum., 634; 5 Sneed, 516; 14 Lea, 74; 16
Lea, 535.

But even in these matters they can do only
such acts "as may be allowed by law" (Code,
§ 462), and "can exercise that portion of the sov-
ereignty of the State communicated to them by
the Legislature, and *no more.*" 11 Heis., 666.

The two sections last quoted, and the others
previously mentioned herein, fail to confer any
power to exempt *property* from taxation. The
Legislature has therein attempted to communicate
no part of the State's sovereignty with respect to
such an exemption.

In none of the several statutes cited in behalf
of complainant, nor in any other, do we find any
authority for a County Court to release the prop-
erty of a railroad company from taxation on any
consideration whatever.

An examination of the statutes relative to
county revenue will clearly show that such author-
ity is withheld. "Taxes on property for county
purposes shall be imposed on the value thereof,
as the same is ascertained by the assessment for
State taxation." Code, § 567. "The County Court
may impose taxes for county purposes, and fix the
rate thereof" (Code, § 566), provided the rate "for
general county purposes shall not exceed the rate
of State taxation." Code, § 565. Taxes levied by

County Courts "shall be equal and uniform" on every species of property, privilege, or poll which is taxed by the laws of the State (Code, § 569); and "the polls, property, and privileges that are taxable or exempt from taxation for county purposes are the same that are taxable and exempt from taxation for State revenue." Code, § 562.

From these provisions it is manifest that the County Courts must levy "an equal and uniform" tax on all taxable property in their respective counties, and that they can exempt no property from taxation for county purposes that is not also exempt from taxation by the State. They may exempt only such property as is exempt from State taxes, and must assess equally and uniformly all that is subject to State taxation. The property of complainant is not exempt from State taxation; hence, the County Court of Wilson County could not lawfully exempt or release it from taxation for county purposes, but was, by the express terms of the statute, required to tax it at the same rate at which it assessed other property for the same period. Its agreement, however solemnly made, and with whatever view, did not abrogate the law.

The fact that the property of complainant was not in existence at the time the release was attempted to be made, and the further fact that the railway has been constructed and equipped almost entirely with capital owned by non-residents of the State, cannot alter the case, or make valid an agreement which would otherwise be void. There

is no more power in the County Court to release from taxation a railroad yet to be constructed than there is to release one already completed and in full operation. Nor is there any authority to discriminate in favor of one constructed with foreign capital as against another one constructed with the means of citizens of the State. When constructed, in each instance, it becomes entitled to the protection of the laws of the State, and, in terms, subject to the burden of taxation.

The Constitution confers no such power on County Courts as that attempted to be exercised in favor of the complainant. It declares that "the Legislature shall have the right to vest such power in the courts of justice, with regard to private and local affairs, as may be deemed expedient." Art. XI., Sec. 9. And that, "a well-regulated system of internal improvement is calculated to develop the resources of the State, and promote the happiness and prosperity. of her citizens; therefore it ought to be encouraged by the General Assembly." Art. XI., Sec. 10. No power is here conferred on any *Court*.

In the latter section is found a distinct expression in favor of a well-regulated system of internal improvement, and a declaration that it ought to be encouraged by the Legislature; but the means of encouragement are to be devised by the Legislature, within constitutional limitations and restrictions. However broad this provision, however great the power thus conferred on the General

Assembly, it is certain that it has not, in pursuance thereof, enacted any law authorizing County Courts to exempt railroad property, present or prospective, from taxation for county purposes. Our review of the statutes has demonstrated that fact conclusively.

Moreover, we must not be understood as agreeing that the Legislature has the power to confer any such authority upon County Courts, or to exercise it itself. Section 28 of Article II. of the Constitution requires that equal and uniform taxes shall be laid on all taxable property, and it enumerates the property that *may* be and that *shall* be exempt from taxation by the Legislature. In that enumeration railroads are not mentioned or included; hence, they must be taxed at the same rate that other property is taxed. The language is as follows: "All property, real, personal, or mixed, shall be taxed; but the Legislature may except such as may be held by the State, by counties, cities, or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational, and shall except one thousand dollars' worth of personal property in the hands of each tax-payer, and the direct product of the soil in the hands of the producer and his immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be

equal and uniform throughout the State. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of 'the same value." Con., Art. II., Sec. 28.

This constitutional mandate that all property (except that mentioned therein for exemption) shall be taxed, prohibits even the Legislature from granting any other exemption whatever, no matter what the consideration; and if it attempt to do so, the effort is unavailing and void for want of legislative power. *M. & C. R. R. Co.* v. *Gains*, 3 Tenn. Ch., 611; *Ellis* v. *L. & N. R. R. Co.*, 8 Bax., 530; *Chattanooga* v. *Railroad Co.*, 7 Lea, 576, 577; 8 Heis., 789, 796; 12 Lea, 547.

The Constitution has declared what property *shall* be taxed, and what *may* and what *shall* be exempt from taxation. Complainant's property is among that which *shall* be taxed; therefore, there was in 1886, and is now, no power in the Legislature or elsewhere to grant the exemption now claimed. It could not be done even upon the understanding that the railway was yet to be located and built, and that it was to be done with foreign capital. "It is not the nature or extent of the consideration which is to be looked to, but the legislative power." 3 Tenn. Ch., 611.

The exemption attempted by the County Court was *ultra vires* and void.

Affirm the decree and dismiss the bill.