GRAHAM *v.* SPIVEY.

(*Knoxville*, September Term, 1939.)

Opinion filed November 25, 1939.

Chas. C. Moore, of Chattanooga, and Kelly & Kelly, of South Pittsburg, for complainant.

Glen W. Woodlee, of Dayton, and R. R. Kramer, of Knoxville, for defendant.

Mr. Justice McKinney delivered the opinion of the Court.

By his original bill complainant seeks specific performance of a contract for the sale of his farm in Marion County to defendant.

It is averred in the bill that defendant owns and operates a hosiery mill at Dayton, Tennessee, and that he was desirous of moving same to South Pittsburg, Tennessee; that he also owns farms along the Tennessee River near Dayton, Tennessee, which will be inundated by the waters of Chickamauga Dam under construction by the Tennessee Valley Authority, and that defendant has negotiated the sale of said farms to the Tennessee Valley Authority. The bill then alleges the following:

"In this situation said Warren R. Spivey negotiated with H. A. Griffith, of South Pittsburg, Tennessee, for the removal of his hosiery mill from Dayton, Tennessee, to South Pittsburg, Tennessee. He also desired to buy a farm near South Pittsburg, Tennessee.

"H. A. Griffith, on behalf of himself and other business

interests at South Pittsburg desired to secure the removal of the hosiery mill to South Pittsburg. To this end he undertook to find for defendant Spivey a farm near South Pittsburg.

"Your complainant owns a large farm along the Tennessee River opposite South Pittsburg, in Marion County, Tennessee, and learning of the fact that defendant Spivey was in the market for a farm, authorized H. A. Griffith, as his agent, to offer his farm for sale to defendant Spivey."

It is then averred that after inspecting the properties defendant entered into a written contract with Griffith, same being in the form of a letter, which was accepted, and is as follows:

"South Pittsburg, Tennessee,      Feby. 14th, 1938.
"Mr. W. R. Spivey,
"Dayton, Tennessee.

"Dear Mr. Spivey:

"Acting for myself and those I represent, with which situation you are familiar, I make you the following offer:

"To sell that portion of the J. H. Graham farm lying south and west of the Ferry Road and the Long Island Road for the sum of $34,000.00 cash, you to assume the payment of the 1938 taxes on the same, but immediate possession of the premises to be delivered to you, Graham to reserve to himself the benefit of such damages to the same as the T. V. A. has now determined to take as shown by the present plans and surveys, but any additional taking, to go to you.

"You are to remove you hosiery mill from Dayton to South Pittsburg on the following terms and conditions:

"You are to have the use of the property known as the

Ingersoll Building, situated on the East side of Cedar Avenue for two years free of rent, but you are to pay the taxes assessed against said real estate for the two years and to pay fire insurance premiums for this period, but you are to have an option to buy the same premises within or at the expiration of said period for a price of $5,000.00. If not purchased, you agree to surrender the building at the expiration of this period in as good condition as it now is.

"The City of South Pittsburg and the County are to free your hosiery mill of tax assesssment for five years for ad valorem taxes.

"You are to have the option to purchase the home known as the R. F. M. Kirkpatrick place at the price of $4,000.00 if you wish, but this option must be immediately exercised or within such time as it is possible for you to inspect it.

"We are to pay the cost of removing your hosiery machinery from Dayton to South Pittsburg, this to cover transportation only.

"Yours very truly,
"H. A. Griffith.

"Accepted: Warren R. Spivey"

Complainant tendered a deed to defendant which he declined to accept; whereupon the bill herein was filed.

It is not claimed that Griffith and his undisclosed associates offered to comply with the other provisions of the contract, and it is conceded that the city and the county cannot release taxes on a hosiery mill operated in South Pittsburg for a period of five years. But counsel for complainant contend that this is a divisible contract which may be enforced as to the farm, regardless of the other provisions thereof.

The bill was demurred to upon numerous grounds,

the fourth and seventh of which were sustained by the chancellor and the bill dismissed. These grounds of the demurrer are as follows:

"IV. There is no offer to perform, or showing of performance, of the various provisions contained in the alleged contract by the parties, other than this defendant, purported to be bound thereby."

"VII. The section in the alleged contract providing for the exemption from tax assessment for a period of five years of the hosiery mill by the City of South Pittsburg and the County of Marion, is illegal, void and unenforcible. This provision of the contract is an integral and non-severable part thereof and the illegality of this portion of said contract results in rendering the entire contract null, void and unenforcible."

In *Barnes Bros.* v. *Coal Co.*, 101 Tenn., 354, 357, 47 S. W., 498, 499, the court quoted approvingly from 1 Ency. Pl. & Pr., 150, 152, note 1, as follows: "Whether a contract is entire or separable into several independent contracts depends upon the intention of the parties, to be ascertained from the language employed and the subject-matter of the contract."

We have found no better statement as to when a contract is entire and when severable than that contained in the opinion in *Coleman* v. *Hudson*, 34 Tenn. (2 Sneed), 463, 466, which is as follows:

"An entire contract in its legal interpretation, is an unconditional agreement for the whole of the several articles, or number, or quantity of goods contracted for; and precludes by its terms, and equally by the plain intention of the parties, all idea of divisibility: a severable contract on the other hand, in its terms, implies an apportionment."

In *New River Lbr. Co.* v. *Tennessee Ry. Co.*, 145 Tenn., 266, 293, 238 S. W., 867, 875, it is said:

". . . Specific performance of illegal contracts will not be decreed by a court of equity. 36 Cyc., 546, and cases cited. Nor does an action for damages lie for redress of the breach of such contracts.

"In this state, if doubt is thrown upon the existence of a legal contract, specific performance thereof will not be enforced. *Morrison* v. *Searight*, 63 Tenn. (4 Baxt.), 476."

■ An agreement by the county and the city to remit taxes is invalid. *State ex rel. Allen* v. *Am. Glanzstoff Corp.*, 167 Tenn., 597, 72 S. W. (2d), 775; *Railway Co.* v. *Wilson County*, 89 Tenn., 597, 15 S. W., 446; *Jones* v. *Memphis*, 101 Tenn., 188, 47 S. W., 138.

It thus appears from the bill that defendant owns a hosiery mill in Dayton and farms on the Tennessee River near Dayton, which farms are to be inundated by the waters of Chickamauga Dam, and that the defendant has negotiated a sale of his farms to the Tennessee Valley Authority.

It further appears that in this situation the defendant desired to move his hosiery mill to some other city and to acquire a farm near his mill. Defendant became interested in the city of South Pittsburg as a suitable location, and the municipality, as well as the county, was anxious for him to locate in their midst; and, as is customary in such cases, decided to make certain concessions as an inducement for defendant to move his plant to that city.

■ It is inferable from the bill that H. A. Griffith, who we assume is a real estate dealer, became the agent of the city, county, complainant, and the other owners of the real property referred to in his letter of February

14, 1938, to represent them in inducing defendant to move his plant to South Pittsburg. The primary object of the interested parties was to obtain the removal of this hosiery mill to Marion County; and as a further inducement they included the valuable farm belonging to complainant, which, it seems, met the requirements of defendant in so far as that particular feature of the contract was concerned. Keeping in mind the foregoing surroundings and purposes, we will now advert to the Griffith letter, which may be divided into six parts and analyzed as follows: (1) Defendant was to move his hosiery mill from Dayton to South Pittsburg; (2) he was to have the use of the Ingersoll Building free of rent for two years; (3) his hosiery mill was to be exempt from city and county taxes for five years; (4) he was to have an option on the Kirkpatrick place for $4000; (5) he was to have the privilege of purchasing the Graham farm lying east of South Pittsburg for $34,000 cash; (6) the parties whom Griffith represented were to pay the cost of removing the hosiery mill machinery from Dayton to South Pittsburg.

It will be observed that the writer made this offer as a whole and not in severalty. Upon receipt of this letter defendant simply wrote underneath thereof: "Accepted: Warren R. Spivey." This cannot be construed otherwise than as an acceptance of the offer in its entirety. The defendant did not say that he accepted the offer in so far as it relates to the removal of his hosiery mill, or that he would take the Graham farm on the terms stated, but he accepted the whole. And, as we interpret this letter, the various parts are interdependent upon the requirement that "you are to remove your hosiery mill from Dayton to South Pittsburg." Had defendant, in reply to Griffith's letter, simply said "I accept your

offer only as to the Graham farm," it is questionable whether complainant could have been required to specifically perform, for the reason that complainant had agreed to sell his farm upon condition that the hosiery mill should be removed from Dayton to South Pittsburg. Giving effect to the intention of the parties, we are satisfied that it was contemplated that defendant would purchase complainant's farm only on condition of the removal of his hosiery mill to South Pittsburg, under the terms and conditions set forth in the contract of February 14, 1938, which Griffith and the parties he represented were unable to perform. The distance between Dayton and South Pittsburg is more than seventy miles, and defendant evidently purposed to have his mill and farm in the same locality.

The chancellor has clearly and succinctly stated the construction which we place upon this contract in his written opinion in the following language:

"The contract does not contemplate or provide for apportionment upon partial failure on either side. It purports to be a contract the performance of which will bind the parties each and jointly to perform on their part and the Court is of opinion that it is an entire contract not severable when properly interpreted."

Counsel for complainant rely upon the following allegations of the bill as evincing severability in so far as the farm is concerned, to-wit:

"Upon the acceptance of this offer and the execution of the contract, defendant Spivey wrote a check for $250.-00 on the same date as an advancement on the purchase price and endorsed upon the check 'earnest money.' This check was delivered to your complainant and he executed and delivered to defendant Spivey a receipt

confirming the agreement entered into by his said agent, H. A. Griffith.''

We accept this interpretation of the receipt, namely, a confirmation of the contract entered into between Griffith and defendant. We also concur with the statement of the chancellor in his opinion as follows:

''I do not think the receipt which was signed by Graham creates a new and independent contract between him and defendant Spivey. This receipt was executed in the light of the contract, bears the same date and must be construed therewith.''

The payment of this ''earnest money'' by defendant was a wise precaution since by so doing he bound complainant to perform in the event he moved his mill to South Pittsburg; otherwise complainant could have withdrawn his offer at any time; or, if called upon to perform, might have repudiated Griffith's authority to give defendant an option to purchase his farm.

We are thoroughly satisfied that defendant was anxious to acquire this farm in the event he moved his hosiery mill to South Pittsburg; on the other hand, he did not want the farm if his plant was not moved to that city.

After carefully considering this contract, with the surrounding circumstances existing at the time of its execution, we are satisfied that it was the understanding of the parties that the agreement as to the purchase of the farm was dependent upon the performance of the contract as to the removal of the hosiery mill to South Pittsburg.

For the reasons stated herein the assignments of error filed on behalf of complainant will be overruled, and the decree of the chancellor is affirmed.