# HAMILTON NATIONAL BANK, Adm'r., etc. v. JOE RICHARDSON, Trustee. —304 S. W. (2d) 504.

Eastern Section. March 26, 1957.

Petition for Certiorari denied by Supreme Court July 29, 1957.

488

Wilkerson, Meacham & Abshire, Chattanooga, for appellant.

Noone & Noone, Chattanooga, for appellee.

McAMIS, P. J. This proceeding involving the estate of Louis Demos, deceased, originated in the Probate Division of the Chancery Court of Hamilton County created by Chapter 201 of the Public Acts of 1955. The only question here presented is the liability of the Administrator for personal property taxes due Hamilton County for the years 1952, 1953 and 1954. Liability without penalty is conceded for the year 1955.

The Chancellor held that the liability of the estate was compromised and settled by an agreed decree entered November 29, 1955, approved by the County Attorney of Hamilton County, by which the Administrator agreed to pay and the County agreed to accept in settlement of the liability of the estate for the four years involved the payment of the 1955 tax without penalty. The Chancellor's decree is based on the further ground that the Trustee stood by, knowing of the agreed decree, and failed to except thereto or file a claim. From the decree limiting the liability of the estate to the year 1955, the Trustee of Hamilton County has appealed.

At the time of his death on September 23, 1953, Louis Demos had on deposit in the Hamilton National Bank the sum of $14,960. The amount was slightly less for the

year 1954 after the estate had passed into the hands of an executor under a purported will which was declared invalid in a will contest terminating in 1954. No personal property assessment was made during either of these years. On January 15, 1955, the present Administrator, Hamilton National Bank, was appointed and on January 26, 1956, the Trustee made pickup assessments for the four years in question which, with interest and penalty, totaled $871.59. On February 15, 1956, the assessment was corrected to increase the amount to $1,207.46. Copies of these assessments were furnished the Administrator. Notwithstanding this notice, however, the funds due distributees were paid out by checks dated April 3, 1956.

The executor under the purported will filed an inventory on October 8, 1953, revealing the liability of the estate for the tax. The Administrator filed another inventory on November 29, 1955, but the Trustee testified that he was not advised of the filing of either of these inventories and that when he learned of the tax liability of Demos and his estate he furnished the Administrator a form to be filled out and returned to the Trustee. The Hamilton National Bank wrote the Trustee on February 8, 1956, showing the amount on deposit. The letter was not signed by the Bank as Administrator, but, since it was evidently in response to the notice sent to it as Administrator, we think this is not material. The Trustee seems to have learned of the liability of the estate some time between the date of the agreed decree of November 29, 1955, and January, 1956. He testified that he was not consulted by the county attorney about the proposed compromise but learned of it some time thereafter. The exact date is not clearly shown.

On November 29, 1955, when the agreed decree was entered, no process or notice of any kind had been served on the Trustee or on Hamilton County. The case was proceeding in the normal way as an administration of a decedent estate. Neither the County nor the Trustee was a party. The only reason advanced in the decree for relieving the estate of liability is the fact that it had been in litigation and no assessment had been made and that, for these reasons, its liability was doubtful. T. C. A. sec. 67-1201 expressly provides that property which has "been omitted from or escaped taxation" shall be back assessed. And see Phillips Pritchard, Wills and Estates, p. 272. If, however, there was a real basis for considering the liability of the estate doubtful, we are not cited to any authority empowering the County Attorney to enter the appearance of the county and agree to a remission or compromise of the taxes.

■■ T. C. A. sec. 5-105 provides that a county may be brought into court but that "process shall be served on the presiding officer of the county court." We find no authority empowering the County Attorney to voluntarily enter the county's appearance in a court proceeding and we hold that he was without such authority. Since the county was not before the court the decree, as to it, is a nullity. The Administrator was required to take notice of this limitation upon the authority of the County Attorney. Kreis & Co. v. City of Knoxville, 145 Tenn. 297, 237 S. W. 55; Carter County v. Williams, 28 Tenn. App. 352, 361, 190 S. W. (2d) 311.

■ But, if the County Attorney had authority to enter the appearance of the County, the tax settlement agreement was beyond his authority. The cases of Railway

Co. v. Wilson County, 89 Tenn. 597, 15 S. W. 446; Reynolds Tobacco Co. v. Carson, 187 Tenn. 157, 213 S. W. (2d) 45; Graham v. Spivey, 175 Tenn. 145, 133 S. W. (2d) 460; Gilman Paint & Varnish Co. v. Carson, 190 Tenn. 256, 229 S. W. (2d) 330, cited in the supporting brief, involved attempts to create by agreement areas of tax exemption and are in point only in principle.

The same principle, however, has been applied by numerous courts in other states to attempts to remit or compromise accrued taxes. A clear statement of the rule and the reasons underlying it appears in State ex rel. Donsante v. Pethtel, 158 Ohio St. 35, 106 N. E. (2d) 626, 628, 28 A. L. R. (2d) 1419, where the court said:

"The general rule is that the power to tax does not include the power to remit or compromise taxes. A tax is not predicated on contract and cannot be discharged by reason of contractual considerations. Where taxes are legally assessed, the taxing authority is without power to compromise, release or abate them except as specifically authorized by statute, and this is for the reason that, if such contracts can be made and performed on the part of a municipality, uniformity and equality are destroyed, and the burden of the obligation so remitted is inequitably cast upon the payers of general taxes in the taxing district."

Numerous cases in support of this holding are cited in the opinion, and see accompanying annotation, 28 A. L. R. (2d) 1428, where it is said:

"The courts are in vitrually unanimous agreement that neither a political subdivision nor an officer

thereof has the power to compromise, remit, or release a claim for taxes, in the absence of specific statutory authorization.'' See also 51 Am. Jur. 847.

Since the County Attorney was not authorized to make the agreement, the decree based thereon is of no effect. 49 C. J. S. Judgments sec. 180, p. 318; 49 C. J. S. Judgments sec. 174(B), p. 311 and see Cummins v. Woody, 177 Tenn. 636, 152 S. W. (2d) 246.

■■ The County Trustee was not required to file a claim for taxes. The statutory limitation period for filing claims against decedent estates, T. C. A. sec. 30-510, does not apply to claims for taxes, Phillips Pritchard, Wills and Estates, sec. 744, p. 272; Commerce Union Bank v. Gillespie, 178 Tenn. 179, 156 S. W. (2d) 425; 21 Am. Jur. 580; Annotation, 109 A. L. R. 1370; 34 C. J. S. Executors and Administrators sec. 400, p. 169.

On the contrary, the statute, T. C. A. sec. 30-520, makes it the duty of the personal representative to hold sufficient funds to pay taxes. In Phillips Pritchard, Wills and Estates, sec. 744, p. 272, it is said: ''Since tax claims are not required to be filed with the clerk, the personal representative should be careful of tax liability and to *withold* sufficient funds or assets to pay all taxes before paying the funeral or unpreferred claims.'' T. C. A. sec. 67-1211 makes it the duty of the County Court Clerk to report to the Trustee personalty shown in the reports of personal representatives subject to taxation.

■ It is thus to be seen that the duty of affirmative action is upon the personal representative and the County Court Clerk and not upon the Trustee. In this case the Administrator not only failed in this duty but, with

notice of the assessment, disbursed all the funds in its hands. The Trustee received no notice from the executor. He promptly made the assessment when he finally learned that the estate held property subject to taxation and we cannot see that the Administrator was misled by any act or omission of the Trustee. But, if so, it would seem that if a county official, as we have held, could not validly remit or compromise a tax liability, his neglect could not accomplish that result. It should be borne in mind that we are not dealing here with a case where no assessment was made until after the personal representative had disposed of the assets of the estate.

The learned Chancellor seems to have been of opinion that since the Trustee filed no claim he was not a party in interest. He was notified that a final accounting was to be made. He appeared and participated and it seems to us he was treated as a party.

For the reasons indicated the Administrator is not entitled to be discharged until the amount due the Trustee is paid and it results that the decree must be reversed and the cause remanded. Costs of appeal will be paid by the Administrator.

Hale and Howard, JJ., concur.