MARY OLYMPIA WHITE et al.

*v.*

RALPH H. KELLEY, Mayor, et al.

CITY OF CHATTANOOGA and Hamilton County, Tennessee,

*v.*

DAVID M. PACK, Commissioner, etc., and James Willie
Powell et ux.

387 S.W.2d 821.

(*Knoxville*, September Term, 1964.)

Opinion filed March 4, 1965.

H. H. GEARINGER, of MOORE, GEARINGER & SWAFFORD, Chattanooga, for Mary Olympia White et al.

ELLIS K. MEACHAM, Chattanooga, for City of Chattanooga.

JAMES F. TURNER, Chattanooga, for Hamilton County.

BRUCE C. BISHOP, of FOLTS, BISHOP, THOMAS, LEITNER & MANN, Chattanooga, for James Powell et ux.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

Essentially the same question is involved in both of these lawsuits. The question is whether or not any authority exists under the laws of Tennessee to prorate or apportion taxes which had become a lien on January 10, where the property thereafter was taken for public use within the ensuing year.

In the Chancery lawsuit this question was answered in the negative. In other words there was no authority to prorate a portion of the taxes under the circumstances stated in the question posed. In the law case the law court did prorate a portion of the taxes where the property was taken for public use within the taxable year. Both cases have been appealed by the parties where an adverse judgment was rendered as to them, able briefs filed and able arguments heard from all sides. After very carefully reading these briefs, authorities and making an independent investigation, we are now in a position to answer the question posed.

In the Chancery suit eminent domains had been filed in a law court against the Whites to acquire rights-of-way for the State of Tennessee for the construction of the interstate highway system. This property lies within the corporate limits of the City of Chattanooga, Tennessee, and was listed on the tax rolls of said city as assessed for municipal taxes in accordance with the laws of the State of Tennessee. An order was entered in this condemnation suit divesting title from the Whites on June 30, 1964, and vesting title in the State for highway purposes. This order directed the Clerk of the Circuit Court of Hamilton County to retain a sum of $149.39 for the 1964 taxes due the City of Chattanooga, Tennessee. Thereafter without pursuing her remedies any further, Mrs. White filed a bill in the Chancery Court for an injunction against the Mayor of Chattanooga and others restraining them from collecting taxes and for other relief. To this bill the Mayor and other officials of Chattanooga interposed a demurrer raising the principal questions that sec. 67-1801, T.C.A., imposes a lien for taxes upon the instant property effective on January 10,

1964, for the entire year; that the tax collecting authorities of the City were without authority at law to accept less than the whole amount of taxes assessed and levied; that no authority existed in law to prorate the taxes for a portion of the year after the lien became fixed thereon; and that such taxes constituted a personal debt in their entirety as against the owner of said real estate as of January 10, 1964.

The demurrer was sustained, the Chancellor holding that the owner of the property on the 10th of January, 1964, was liable for the entire year's taxes upon said property, and that no authority existed in law to prorate or apportion said taxes for part of the year and that the municipal authorities were without authority to prorate and are entitled to the payment of the taxes as assessed. This appeal followed.

In the law case a similar eminent domain proceeding was had to take the property of the Powells. This suit was filed in February, 1964, the State paying in their appraised value of the property, etc., according to statute, and taking possession of the property. The Powells accepted this tender under the statute and appealed. The case was tried before a jury wherein the value as fixed by the authorities was increased from $43,000.00 plus to $55,000.00 plus. This then was accepted. The Powells answered and stated that there was a mortgage on the property and the property was likewise subject to certain tax liens of that year. It was shown that the Powells only had possession of this property for some fifty-five (55) days subsequent to January 10, 1964, and on this basis the trial judge apportioned or prorated the taxes, only charging the Powells the prorata part of fifty-five (55) days and its relation to the whole year. A motion for a

new trial was seasonably filed by the City and County, which was overruled, and an appeal was perfected.

The Legislature has provided that the owner of property on the 10th day of January of each year shall be liable for taxes for that year, and it is further provided that the State and municipal authorities have a lien for taxes which becomes fixed upon real estate as of January 10 of each year. These provisions provided by the Legislature are carried into the Code under sec. 67-1801 et seq., T.C.A., and among other things it provides that this lien shall extend to every part of the property "notwithstanding any division or alienation thereof, * * *" (sec. 67-1802, T.C.A.) and in the following sec 67-1803, T.C.A., it is provided that the lien shall be upon the fee and not merely upon the interest of the person and extends to all interests. These statutes, as amended, have been on the books for more than a hundred years. The courts in the meantime in construing these statutes have held that not only is the property liable but the owner thereof becomes personally liable with the lien as the security for the indebtedness. *State ex rel. Bonner v. Andrews,* 131 Tenn. 554, 175 S.W. 563. When property is assessed it becomes a personal debt and the government is entitled to all remedies for collection including an ordinary suit. *City of South Fulton v. Parker,* 160 Tenn. 634, 28 S.W.2d 639. When property has been thus assessed for the whole year's taxes, and the owners have become liable therefor in the full amount as of January 10 of the tax year, the City and County authorities have no authority to accept less than the whole of the taxes assessed in satisfaction of the tax. The Court of Appeals in *Salts v. Salts,* 28 Tenn.App. 318, 190 S.W.2d 188, said:

"Partial payment of the tax does not release the lien or relieve the property for the balance of the tax due. After a partial payment and the failure to pay the balance it is the duty of the property officers to enforce collection of the balance in the same manner as if no partial payment had been made. The original tax should be credited with the partial payment."

In a comparatively recent case of the Court of Appeals of *Hamilton National Bank v. Richardson*, 42 Tenn.App. 486, 394 S.W.2d 504, that court in a very well reasoned and stated opinion by the Presiding Judge of the Court of Appeals, Judge McAmis, held that the Trustee of Hamilton County had no authority to accept a compromise of the amount of the taxes owed the County. In this case the Trustee had brought suit to recover the full amount of the taxes due. The Court held that he was entitled to collect the full amount and that the power to tax does not include the power to remit or compromise taxes. The reason, of course, back of this is perfectly obvious because if Trustees, and those who have the authority and duty to collect taxes, could remit or compromise taxes there would never be any uniformity in the collection of these taxes. This opinion likewise held that a tax is not predicated on a contract and cannot be discharged by reason of a contractual situation, and where taxes are legally assessed, the taxing authority is without power to compromise, release or abate them except as specifically authorized by statute. In this case ample authority from many jurisdictions is cited and our examination of this authority shows that it well supports the conclusions reached in this case. We denied certiorari.

The lien attached as of January 10 of the taxable year, and in both of these cases attached prior to the

filing of the declaration of taking. That being true, the award for this property stands in place of the property. Nichols on Eminent Domain, 2nd Ed., page 353; 29 C.J.S. Eminent Domain sec. 200, and cases therein cited. The power to tax is a basic incident of sovereignty. Without it no government can function. To hold in the absence of a specific statute to that effect that the tax collectors had the authority of prorating or apportioning taxes would put upon the county the burden of making the segregations and enforcing collections of proportionate shares. Chaos in the collection of real estate tax revenues would result.

█ █ Of course, we will take judicial knowledge of the fact that in these eminent domain or condemnation suits what the government pays is based on the theory of just compensation for the land, free and clear of liens. In these cases the landowner in practically every case is given more for the land taken than it would be sold for on the open market regardless of the charge to the jury. We know as a matter of fact that jurors take all these things into consideration and place normally an adequate price upon the land as thus taken. There is nothing unjust or inequitable in requiring the landowner to pay off tax liens. He would expect to do just that if he sold to anyone else except where he had a private contract with the purchaser to the contrary.

The City and County are entitled to the amount of their tax liens from the award made in these eminent domain or condemnation suits. The question here being considered is annotated in 45 A.L.R.2d, beginning at page 522, wherein nearly all conceivable kind of questions in this regard are considered. At page 529 of this annotation the writer says: .

"Generally, real-estate taxes may be deducted from a condemnation award, or the former owner may be held liable therefor, where the taxes accrued or became a lien prior to the condemnation."

Following this statement cases from many jurisdictions are cited, including our case of *State v. Benner,* 182 Tenn. 395, 187 S.W.2d 609, wherein this Court merely said, "The cause will be remanded to enable the Chancellor to determine the amount of the taxes beginning with 1925, which constitute prior lien upon the fund in court."

In the law case the property owner argues that as of the taking of this property in February subsequent to January 10 the amount of the tax had not been determined by the assessing authorities and that for this reason the condemnation award was not subject to any taxes subsequently levied on this property. The answer of the property owner in the condemnation suit specifically says in accepting the preliminary offer of the State that they would do so realizing that the property was subject to taxes which would become a lien and to a certain mortgage. There are cases which hold that where the taxes have not accrued at the time of condemnation, or have not become a lien on the land at the time, the award may not be subject to the payment of such taxes on the theory that the condemnee was not liable for these taxes. In this State under the statutes cited in the outset hereof the assessment when made within that year on a particular property does become a lien on that property as of January 10 of that year. Thus it is that we think regardless of whether the actual amount of the tax had been figured out by the tax authorities as of the date of taking so long as the time of taking was subsequent to January 10 of any particular year the property and owners of the

property under the statute are liable for the tax which covers the whole year.

It was held in *Magruder v. Supplee,* 316 U.S. 394, 62 S.Ct. 1162, 86 L.Ed. 1555, that where the date fixed by the statute for determination of the taxable status of property falls before the actual assessment, one owning property on such date may not escape liability for taxation by selling the property before completion of the assessment rolls.

At page 544 of the A.L.R. annotation the question of prorated taxes is considered. The author cites cases and makes the statement that under some cases where the statute provides for proration, proration may be had. The closing sentence in this paragraph on proration is this: "Under some statutes it has been held that taxes should be thus prorated." Most of these statutes in the few states which do have such a statute allowing proration have passed statutes which put the condemnor and condemnee in the relationship of grantor and grantee of a private sale. We have no such statute in this State, and over the years have acted to the contrary.

In the same annotation at page 555, 45 A.L.R.2d, the author says:

"Taxes which have accrued or become a lien on real estate under the local law prior to its acquisition by the United States by eminent domain proceedings are payable out of the compensation fund." (Citing a legion of cases therefor.)

This same principle holds true when the State takes the property from one of its citizens by condemnation proceedings in the absence of a specific statute to the contrary.

It thus results that we affirm the action of the Chancellor in the chancery lawsuit and reverse that of the Judge in the law cause. The costs in reference to these two proceedings shall be taxed to the respective property owners.