**Richard Villeneuve and Ardelle Villeneuve**
**v.**
**Town of Underhill, I. James Beams, Tax Collector**

[296 A.2d 192]

No. 161-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed October 3, 1972

Lawrence A. Wright, Esq., of Gravel & Shea, Burlington, for Plaintiffs.

Eric A. Schuppin, Esq., Essex Junction, for Defendant.

**Shangraw, C.J.** This action was commenced in the Chittenden County Court of Chancery on April 1, 1970, after the plaintiffs, Richard Villeneuve and Ardelle Villeneuve, received notices their taxes assessed by the defendant, Town of Underhill, for the years 1968 and 1969 remained unpaid, and that so much of their lands as necessary to discharge the unpaid taxes and costs of sale would be sold at public auction. In their Bill of Complaint the plaintiffs sought to enjoin the Town, and its tax collector, from selling any of their real property because their 1968 tax assessments were still in litigation in this Court, and their 1969 taxes were assessed in an illegal and void manner.

Soon after this action was commenced in the Court of Chancery, this Court denied the plaintiffs' petition for a writ of *certiorari* to review the findings of the Chittenden County Board of Tax Appraisers relating to the 1968 tax appraisal of certain of plaintiffs' lands located within the Town of Underhill. *Villeneuve v. Commissioner of Taxes,* 128 Vt. 356, 264 A.2d 774 (1970). See also *Petition of Villeneuve,* 127 Vt. 620, 256 A.2d 455 (1969).

The facts were stipulated by the parties, and based upon these the Chancellor was able to make findings of fact, conclusions of law, and dismiss the Bill of Complaint brought by the plaintiffs. It is from this order of dismissal that the plaintiffs have brought this appeal.

The facts pertinent to the issues presented by the plaintiffs in this appeal began on April 19, 1969, when the plaintiffs voluntarily delivered to the listers of the Town of Underhill a Vermont Tax Inventory, in accordance with the provisions of 32 V.S.A. § 4004, setting forth their values as to the fair market value of all real estate owned by them in the Town of Underhill. This inventory listed the real estate owned by the plaintiffs as it had been shown in the grand list of the previous year, except that the plaintiffs assigned valuations to the properties significantly lower than the values adopted by the listers in 1968 and carried forward by them in 1969. Subsequent to this, the listers wrote the plaintiffs a letter stating as follows:

"We received your inventory dated April 19, 1969, and find that it is incomplete because you have not listed your lease land holdings. Please file a corrected inventory with us as soon as possible."

The plaintiffs complied with this request when, on June 5, 1969, they filed the amended inventory which included their leased lands.

On June 20, 1969, the plaintiffs received written notification from the listers that plaintiffs' valuations of the leased lands set forth in the corrected inventory of June 5, 1969, had been rejected by the listers, and a new inventory had been made for them. However, the plaintiffs did not receive any notice about those properties set forth in the inventory which they voluntarily filed on April 19, 1969. The differences in appraised valuation on the properties for which the plaintiffs received notice were settled with the exception of the so-called "Learned Lot", and on July 9, 1969, the plaintiffs filed a notice of appeal to the Board of Civil Authority for the Town of Underhill pursuant to 32 V.S.A. § 4404.

The Board of Civil Authority held a hearing on the appraised valuation of the "Learned Lot", and, on August 21, 1969, the plaintiffs were notified the Board had decided to leave the

appraised value of the "Learned Lot" at the value set by the listers. From this adverse determination the plaintiffs, on September 8, 1969, filed an appeal with the Commissioner of Taxes pursuant to 32 V.S.A. § 4441, which was then in effect.

On October 20, 1969, the plaintiffs tendered to the Town of Underhill a check for the taxes on all of their properties exclusive of the leased lands. The check was made in accordance with the 1969 tax rate, however the amount was based upon the values set forth in the inventory which had previously been voluntarily filed by the plaintiffs. The tax appraisals made by the listers for 1969 were the same as that made for the year 1968. Based upon the 1969 tax rate, the check tendered by the plaintiffs was insufficient to pay the 1969 taxes. The check also included the wording, "In full payment for Town and school real estate taxes for the year 1969 on the following lots", and the lots were then described with particularity. The check was returned by the Town Clerk, and on a note she stated she could not accept the check as it did not agree with her figures. The plaintiffs next proceeded to file with the town an objection to the validity of the 1969 tax assessment because the town did not notify them of any change in their 1969 tax inventory for the properties which the plaintiffs had tried to pay their taxes on October 20, 1969.

The Commissioner of Taxes notified the plaintiffs on January 7, 1970, that the Chittenden County Tax Appeal Board had decided to deny their appeal; thereby keeping the appraised value of the "Learned Lot" at the value set by the listers and the Board of Civil Authority. Subsequent to this the plaintiffs tendered a check to the town for the original tax on the "Learned Lot", but did not include any amount for the penalties and interest. This check was marked "payment in full". Soon after, the check was returned to the plaintiffs with a note stating the check could not be accepted as there were now penalties and interest due.

The pre-eminent question raised by the plaintiffs in this appeal focuses upon the lack of notice received by them from the listers when the inventory voluntarily filed by the plaintiffs on April 19, 1969, was not accepted, and the listers carried forward the appraised values used in the previous year.

In this appeal it is the plaintiffs' contention that once they voluntarily filed an inventory pursuant to 32 V.S.A. § 4004, the town was required to serve them notice, as provided for in 32 V.S.A. §§ 4084, 4085, when it failed to accept the values set forth therein. It is the plaintiffs' further contention that because the notice was insufficient, the tax was invalid and uncollectible. In support of this argument plaintiffs rely on the holdings in *Ryan* v. *Rooney*, 88 Vt. 88, 90 A. 891 (1914); *Thomas* v. *Leland*, 70 Vt. 223, 39 A. 1094 (1897); and *Meserve* v. *Folsom*, 62 Vt. 504, 20 A. 926 (1899).

The argument made by the plaintiffs presupposes the fact that once they voluntarily filed an inventory they were entitled to notice when the listers made the plaintiffs' list, just as those who are required under the provisions of 32 V.S.A. § 4004, *supra*, to file an inventory. Whether or not this presupposition may be justified depends in part upon the purpose sought to be fulfilled by the filing of an inventory. An examination of 32 V.S.A. § 4084 which states:

> "When a person wilfully omits to make, swear to and deliver an inventory, or to answer any interrogatory therein as required by this chapter, or makes a false answer or statement therein, or if the listers believe that an inventory does not contain a full, true and correct statement of the taxable property of such person, the listers shall ascertain as best they can the amount of the taxable property of such person and appraise the same at its fair market value. When, in the opinion of the listers, the amount so obtained is less than the amount of the taxable property of such person, they shall further appraise his property at a sum which will, in their judgment, equal the difference between the amount of such appraisal and the amount of his taxable property. When taxable property of such person is not ascertainable by the listers, they shall appraise the property of such person at a sum which, in their judgment, is the fair market value of all the taxable property owned by him. The amount so obtained, multiplied by the per cent of fair market value that is used by the listers in the town in which the property is situated, shall be the listed value, one per cent of which, together with the amount of the

taxable poll, if any, shall constitute the grand list of such person."

makes it apparent the purpose of an inventory is to provide a means of disclosing the amount of taxable property held by a taxpayer, thereby enabling the listers to make an appraisal based upon all the taxpayer's property.

This is not the only time this Court has stated this to be the purpose of an inventory. In *Brush* v. *Buker*, 56 Vt. 143, 146 (1883) this Court in its decision of an earlier version of 32 V.S.A. § 4084 stated: "The purpose of the statute of 1880 was to provide more effective means for bringing to light taxable property. . . ." See also 32 V.S.A. § 4001.

The purpose for which the plaintiffs voluntarily filed the inventory was to set forth their views as to the fair market value of their properties appraised by the listers in the previous year. When this is compared with the purpose of filing an inventory, it is obvious the inventory was not submitted by the plaintiffs for the purpose for which it was intended.

Whether or not the plaintiffs were entitled to notice must also depend upon the objectives sought to be effectuated by them when the voluntary filing of the inventory is viewed in terms of the Vermont tax appeals procedures. The facts demonstrate it to be readily apparent the plaintiffs sought to use the voluntary filing of an inventory as a means of expressing their objections to the appraised values of their properties as they were listed in the previous year. A means of allowing the taxpayer an opportunity to object to the appraised valuation of his property is provided for in 32 V.S.A. § 4111(e) where notice is given to the taxpayer of an opportunity to appear at a grievance meeting before the listers. See *Village of Morrisville Water and Light Department* v. *Town of Hyde Park*, 129 Vt. 1, 2–3, 270 A.2d 584 (1970); and *Braune* v. *Town of Rochester*, 126 Vt. 527, 528, 237 A.2d 117 (1967), where this procedure is set forth.

Thus, when it is considered that the plaintiffs filed the inventory when it was not required for a purpose not within that of the statute, and sought an objective otherwise readily attainable, it becomes obvious there is no justification for allowing the plaintiffs to bootstrap themselves to the status of a taxpayer who is required to file an inventory.

Indeed, it is also disclosed by the facts of this case that when the listers placed the plaintiffs into the position of being required to file an inventory on their leased lands, notice of the rejection of that inventory was given as provided for in 32 V.S.A. §§ 4084–4085.

For these reasons we hold the Town of Underhill was not required to give the plaintiffs notice when they rejected the inventory voluntarily filed by the plaintiffs on April 19, 1969. In so doing, we also hold those cases relied upon by the plaintiffs, continue to be the standard by which the adequacy of notice must be judged when an inventory is required of a taxpayer by the listers.

The next claim of error raised by the plaintiffs relates to that portion of the lower court's decision which held the plaintiffs were required to pay their real property taxes on or before the normal due date, or incur penalties and interest thereon, even though the appeal pending on the "Learned Lot" was not decided until after the due date. It is the plaintiffs' contention their list was not ascertained until the completion of their appeal, and as a consequence there is no statutory basis for an assessment until the appeal is passed upon.

In construing statutes the general rule is to ascertain and give effect to the intent of the legislature, and if it can be fairly done, construe the statute to accomplish the purpose for which it was intended. *Medlar & Goodrich* v. *Aetna & Travelers,* 127 Vt. 337, 342, 248 A.2d 740 (1968); *Abbadessa* v. *Tegu,* 121 Vt. 496, 498, 160 A.2d 876 (1960). Where the meaning of the statute is plain and unambiguous, there is no necessity for construction and the statute must be enforced according to its terms. *Brattleboro Chalet Motor Lodge* v. *Thomas,* 129 Vt. 405, 411, 279 A.2d 580 (1971).

A review of the procedure by which the grand list is completed includes 32 V.S.A. § 4151(a) which states in part:

". . . on or before May 25, the listers shall make all corrections in the abstracts and shall lodge such completed book in the office of the town clerk."

When 32 V.S.A. § 4151(a), is read with 32 V.S.A. § 4602 which provides as follows:

"Subject to the provisions relating to the assessment of taxes on an amended or corrected grand list, state and

county taxes assessed, and town, village, school and high-way taxes assessed or voted on or after March 1 in any year and before March 1 following, and fire district taxes assessed or voted on or after January 1 in any year and before January 1 following, shall be assessed on the grand list returned to the town clerk's office in May of such year. In case of incorporated villages that have their annual meetings before March 1, taxes so voted at such annual meetings, subject to such provisions, shall be assessed on the grand list returned to the town clerk's office in May of the year when such taxes are voted."

it becomes evident the grand list is completed when it is returned to the town clerk's office in May of each year.

It is also a rule of statutory construction that statutes *in pari materia* are to be construed with reference to each other as parts of one system. *In re Preseault*, 130 Vt. 343, 292 A.2d 832 (1972). When the clear and unambiguous mandate of 32 V.S.A. § 4151(a), and 32 V.S.A. § 4602, is construed with 32 V.S.A. § 4410, and then effective 32 V.S.A. § 4450, it becomes clear the plaintiffs' grand list was completed, subject to correction or amendment upon appeal, at the time it was lodged in the office of the town clerk. Thus, the Town of Underhill had a statutory basis for the tax assessment made against the plaintiffs during the time the plaintiffs were appealing their appraisal.

Provision is made for the town to collect interest on past due taxes at 32 V.S.A. § 5136 which states:

"When a town or municipality within it votes under an article in the warning to collect interest on over-due taxes, such taxes, however collected, shall be due and payable not later than December 1, and shall bear interest at the rate of one-half of one per cent per month or fraction thereof from the due date of such tax. A town or municipality having so voted to collect interest as hereinbefore provided shall thereafter collect such interest each year until the town shall vote otherwise at a meeting duly warned for the purpose of voting on such question."

No exception is made in 32 V.S.A. § 5136, for taxpayers who have in good faith appealed their tax assessments. Indeed, the general rule as to the liability of a taxpayer for interest on past due taxes being appealed is that the taxpayer is liable for any interest assessed upon such unpaid taxes if the decision is adverse to him. *Stein* v. *State Tax Commission*, 379 S.W.2d 495, 499 (Mo. 1964). See also Annot., 147 A.L.R. 142 (1943) and Annot., 96 A.L.R. 925 (1935).

██. The justification for this rule arises from the fact there is a presumption that the officials of a town perform their duties in accordance with their authority. *Hoosier* v. *Commissioner of Taxes*, 124 Vt. 341, 343, 205 A.2d 821 (1964). For this reason the tax assessment must be presumed to be valid during the time it is being appealed. Consequently, a taxpayer who denies the town its tax monies during the course of an appeal, thereby retaining them for his own use, must accept the risk of having to pay interest on that assessment if his appeal fails.

Next, the plaintiffs contend the town is estopped from collecting any real estate taxes due from them because it refused to accept two checks upon which the plaintiffs had marked "paid in full".

██ The first check tendered to the Town of Underhill was on October 20, 1969. This check was properly refused by the town upon the ground it was an insufficient tender, as in the absence of a statute, the town is under no duty to accept part payment of a given tax. *Schaffer* v. *State Board of Equalization*, 109 Cal.App.2d 574, 578, 241 P.2d 46 (1952) ; *White* v. *Kelley*, 215 Tenn. 576, 582, 387 S.W.2d 821 (1965). See also Annot., 84 A.L.R. 774 (1933).

The second check tendered to the Town of Underhill was for the taxes due on the "Learned Lot", however, it did not include the penalties and interest which had accrued during the course of the appeal. Again this check was properly refused because it was an insufficient tender.

By reason of the foregoing we need not reach the last argument advanced by the plaintiffs wherein they urge that when any portion of a tax is found invalid, the entire tax becomes invalid and uncollectible.

*Order of dismissal affirmed.*