# Phyllis Ann Emmons v. Donald E. Emmons

[450 A.2d 1113]

No. 334-80

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed August 9, 1982

509

*Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff-Appellant.

*Lisman & Lisman*, Burlington, for Defendant-Appellee.

**Billings, J.** The plaintiff-appellant obtained a divorce decree from the defendant-appellee on the grounds the parties lived separate and apart for six consecutive months and the resumption of marital relations was not reasonably probable. 15 V.S.A. § 551(7). The trial court made findings of fact and decreed custody of the parties' youngest child, then age 16 years, to the defendant, the other child having already obtained majority, and further decreed the disposition of property. 15 V.S.A. § 751. Plaintiff appeals the award of the custody of the youngest child and the disposition of savings accounts, cash, investments, and an apartment building.

The custody issue is moot because the child involved is now of legal age, so we do not address that claim of error. The sole issue before us is whether the trial court erred in the distribution of marital assets.

Following two years of marital discord and unsuccessful attempts at reconciliation and counseling, plaintiff, who was an assistant professor at a nearby college, moved out of the parties' homestead and took up residence at one of the college's dormitories as a housemother. The parties had been married for twenty years during which time the plaintiff was gainfully employed outside the home for over fifteen years.

At the time of the decree the parties owned a house and fifteen acres of land with a net value of approximately $65,-

000. The parties agreed that the homestead would be sold as soon as the youngest child reached majority and the net proceeds divided. But the plaintiff claimed the property should be divided equally, while the defendant desired a two-thirds division to him and one-third to the plaintiff. In addition, the defendant owned an apartment house standing in his name alone with a net value of $55,000, and had approximately $49,300 in other assets, although the defendant disputed the $30,000 valuation for miscellaneous personal property set by the plaintiff. The plaintiff's property consisted of approximately $10,350 in stocks, bonds, cash, and miscellaneous personal property.

The trial court decreed that the net proceeds of the homestead be divided equally and the household furniture be divided as the parties agreed, or sold and the proceeds divided equally if the parties failed to agree. The parties did not appeal this part of the order. The trial court also ordered that all "savings accounts, money, or investments" be decreed to the party having possession and ownership thereof and decreed the apartment house property to the defendant. This part of the order resulted in a large disparity in the division of the property favoring the defendant. On appeal the plaintiff claims that the trial court abused its discretion in dividing the savings accounts, money, investments, and the apartment house unequally because two of its findings are not supported by the evidence: (1) the finding that the plaintiff "abandoned the home," and (2) the finding that there was no evidence from which the trial court could determine what savings and investments the parties had in their possession and their value.

15 V.S.A. § 751 provides that the disposition of marital property in divorce actions shall be "just and equitable, having regard to the respective merits of the parties, to the condition in which they shall be left by such divorce [and] to the party through whom the property was acquired." In the division of property the trial court may consider relevant fault or nonfault as a factor in arriving at a just and equitable division. *Senesac* v. *Senesac*, 135 Vt. 24, 25, 370 A.2d 214, 215 (1976); *Boone* v. *Boone*, 133 Vt. 170, 173, 333 A.2d 98, 100 (1975). Trial courts have wide discre-

tion within the limits of 15 V.S.A. § 751 in formulating awards of property. *Field* v. *Field*, 139 Vt. 242, 244, 427 A.2d 350, 352 (1981). Upon appellate review we will not interfere if a reasonable evidentiary basis supports the court's findings and the findings are sufficient to support the conclusions of law,[1] but we have recognized that because "a decree relative to property is final and not subject to modification, . . . the wide discretion given to the trial court in this area must be tempered when the distribution reflects inadequate findings." *Id.* (citation omitted).

In the present case, the trial court's finding that the plaintiff had "abandoned the home" is not supported by the evidence. Plaintiff testified that she left the home because of irreconcilable differences with the defendant and because she realized that he would never be the one to move out. She stated that her leaving was "by mutual consent." The defendant testified that, although he believed she left because "she became more interested in her career than the house," he concurred in her decision to leave. This is the extent of the evidence on this issue. There was no evidence that the plaintiff suddenly disappeared unannounced without being heard from for a significant period of time, or failed to maintain contact with her children, or failed to provide any necessary financial support which might be expected under the circumstances. Merely leaving the homestead in and of itself is not sufficient to justify a finding of fault under 15 V.S.A. § 751. Such a result would substantially circumvent the no-fault divorce provision authorized by our statute. 15 V.S.A. § 551(7).

Our divorce statute provides under 15 V.S.A. § 551(7) for divorce without fault after a six-month separation. 15 V.S.A. § 751 permits fault to be a factor in the

---

[1] The rule in *Gilwee* v. *Town of Barre*, 138 Vt. 109, 111, 412 A.2d 300, 301 (1980), concerning our standards for reviewing incorrectly reasoned trial court decisions, is a vary narrow decision. It stands for the proposition that we will affirm trial court holdings that are incorrectly reasoned but correct, in the final analysis, as a matter of law. It does not stand for the proposition that we will affirm trial courts for any reason selected at random from the record.

division of the marital property. But, the two sections should not be read in isolation from one another. It is a fundamental rule of statutory construction that statutes dealing with the same subject matter should be construed with reference to each other as parts of one system. *Villeneuve* v. *Town of Underhill,* 130 Vt. 446, 453, 296 A.2d 192, 197 (1972). To hold that the mere act of separation itself can be grounds for a finding of fault under 15 V.S.A. § 751 is to take away with one hand what was given with the other. If this were the case, whoever left the homestead first for the purpose of obtaining a divorce under the six-month separation provision, 15 V.S.A. § 551(7), would jeopardize his or her right to the marital property. This would thwart the clear legislative purpose of enacting 15 V.S.A. § 551(7). We are not deciding that fault can never be a factor in the division of property in no-fault divorces granted under 15 V.S.A. § 551(7). We are simply holding that the mere act of separation by itself cannot be grounds for a finding of fault under 15 V.S.A. § 751 in such cases.

The other finding challenged on appeal is also unsupported by the evidence. The trial court found as follows: "Each party has some savings and investments in their respective names and possession. There is no evidence from which the Court can find just what such personalty is or its value." This is clearly erroneous. The uncontradicted testimony of the parties establishes that at the time of the hearing the plaintiff held some $4,850 of savings and investments while defendant controlled approximately $19,300.

 The trial court's reliance on these erroneous findings in dividing the property with such disparity was a clear abuse of discretion. *Field, supra,* 139 Vt. at 244, 427 A.2d at 352; *Palmer* v. *Palmer,* 138 Vt. 412, 416, 416 A.2d 143, 146 (1980). Because the trial court failed to carry out its duty to make a "just and equitable" division of the property as required by 15 V.S.A. § 751, a remand is necessitated. *Field, supra,* 139 Vt. at 245, 427 A.2d at 352.

*Reversed and remanded for hearing on division of savings accounts, money and investments, and apartment property; affirmed as to the merits of the divorce and other property division.*

**Peck, J.,** dissenting. My disagreement with the majority involves fundamentals. They have, I believe, intruded improperly into the trial court's prerogative of assessing credibility and finding facts; moreover, they have engaged in an exercise of statutory construction which, in my view, is not only fallacious, but serves no legitimate purpose, and finally, they have failed to analyze the record in the light of the statutory mandates of 15 V.S.A. § 751. Accordingly, I am compelled, respectfully, although not reluctantly, to dissent.

In reaching its conclusion the majority has relied heavily on modifying evidence which, of course, it should have excluded entirely. In appeals of this nature, we are required to view the evidence in the light most favorable to the *prevailing* party. *Trudeau* v. *Conway*, 139 Vt. 167, 168, 423 A.2d 854, 855 (1980). Both "[t]he weight and credibility of the evidence and its persuasive effect are for the trier of fact," not this Court. *Id.* at 168, 423 A.2d at 856. "As we have often stated, the trier of fact is given the sole determination of the weight of the evidence, the credibility of witnesses, and the persuasive effect of the testimony." *Capital Candy Co.* v. *Savard*, 135 Vt. 9, 12, 369 A.2d 1361, 1362 (1976). Furthermore, this Court has held frequently that the trial court has wide discretion in the distribution of property under § 751. The majority acknowledge this, but when confronted by a broad discretionary act on the part of the trial court, they ignore valid supporting evidence and legitimate findings based thereon, to criticize the act as unsupported, and as an abuse of discretion. In other words, they have evaded the spirit of these rules by the simple expedient of saying that certain important findings are not supported. In my view those findings are not only sufficient but amply supported by evidence, the weight and credibility of which are for the sole and exclusive determination of the trier of fact.

The majority appear to recognize 15 V.S.A. § 751 as controlling the distribution of property in divorce proceedings. There is, nevertheless, an almost complete failure to respect the findings of the trial court and the supporting evidence disclosed by the record in the light of this statute.

Stated broadly, my general objection to the majority opinion and its consequences is the failure to acknowledge and extend proper deference to credible supporting evidence.

More specifically, I perceive two areas of concern affected by this failure. The first is the issue of fault; the second is the absence of any analysis of the property assignment made by the trial court under the mandate of 15 V.S.A. § 751.

## I.

Although the possibility of fault is recognized, it seems to me that the majority is trying to signal the court below that no fault should be found here. I see no other purpose for its emphasis on the patently obvious: that the mere act of leaving the home first, *standing alone,* is no basis for a finding of fault. Has someone suggested that it is?

The opinion continues with an effort to bolster this unquestioned principle through a puzzling non sequitur of statutory construction which attempts to tie together 15 V.S.A. §§ 551(7) and 751. The rationale appears to be that since "living apart" for six months without a reasonable likelihood of reconciliation constitutes *grounds* for divorce under § 551(7), the act of leaving first, without more, provides no basis for a finding of fault under §751. But the relationship of the two statutes on this basis is absurd; to have any validity, as an indication of legislative intent, it must also be said that the mere act of leaving in order to commence the six-month period automatically precludes inquiry into any fault on the part of the party who leaves.

The argument is fallacious. It begs the question of fault; it does not answer it. The issue here does not involve, in any way, the consequences of leaving without fault. The proper question is whether, under the circumstances disclosed by the record, the trial court was *justified* in concluding that plaintiff's leaving constituted fault. The very major premise of the principle to which the majority unnecessarily devote so much space, syllogistically *assumes* no fault. If there is in fact no fault, the principle is there (subject to the mandates of § 751). If there is fault, the principle is not applicable. What possible reason can there be for this heavy underscoring of the obvious? In my view it is transparent.

As I read the majority opinion, it relies on not only purely modifying evidence, but on an absence of evidence concerning after the fact matters as well, i.e., certain things plain-

tiff did *not* do after she left. No consideration is given to *supporting* evidence appearing in the record and relating to circumstances both before and after she left. In short, the majority is selecting the evidence it will consider as well as judging the credibility and weight of the evidence, substituting itself as the trier of fact. There are many uncertainties in the law, but one thing is fixed in certainty: it is the trial court, not the appellate court that is the exclusive and legitimate judge of both weight and credibility.

Although the majority conclude that there was "two years of marital discord," this exaggerates and interprets the record. The record shows no active or actual "discord" between the parties during that time. The most that can be deduced fairly from the record is that plaintiff may have become simply bored with the relationship, and chafed at whatever restraints it imposed against pursuing her personal career. Exactly how a continuation of the marriage posed any such impediment, or was any more limiting to her career in education than it was to defendant in his employment, is not explained.

The majority refer also to "unsuccessful attempts at reconciliation and counselling." This bare reference also expands the true significance of what these attempts amounted to by telling only half the story. The so-called "counselling," which has impressed the majority, consisted of "one session and . . . a weekend of marriage therapy." This was hardly a determined or heroic effort by either party to resolve whatever problems may have then existed (in fact there is no evidence that any difficulties were *not* resolved for that time), and far from sufficient to *compel* the result reached by the majority. Moreover, the relationship continued for some time thereafter without any remarkable difficulties, as far as the record shows, until (as the trial court found) plaintiff abandoned the home in order to pursue the career in which she was already established.

The recitations by the majority, discussed above, illustrate the paucity and weakness of the evidence which it apparently relies upon to justify its conclusion of no-fault, and which, even then they exaggerate by assumptions and their own interpretation. Moreover, these recitations are selective and modifying (at best) in their scope. Thus, by selecting at ran-

dom from the record virtually the only evidence, weak as I believe it to be, which may be said to provide any support for its opinion, and disregarding all of the evidence favorable to the prevailing party, the majority ignore the principles of appellate review.

In the light of the evidence which provides support for a finding of fault, the majority's conclusion that there was none, or none shown, as a matter of law, is at least perplexing. Examining the evidence supporting the trial court's conclusion of fault, the record shows plaintiff left the home to pursue the career she was already in, leaving behind, without the immediate maternal benefits she might provide, her two children, still minors at the time. The youngest child, a son, had approximately two and a half years of minority remaining. They were left, moreover, as the financial and immediate parental responsibility of defendant. But this, the majority contend, is insufficient evidence. I cannot accept such a conclusion without protest.

If the facts here, including the circumstances attendant upon plaintiff's leaving, as briefly summarized above, do not justify and support fault, I despair that fault can ever exist legally under § 551(7), short of actual physical or mental abuse, of which there is no evidence, or any claim made here. There *was* fault until the majority opinion was written to say there was not.

The majority seem to be saying that children, sons or daughters, no longer need or benefit from paternal or maternal guidance in the home sometime during their teen years so that, assuming their simple financial needs can be satisfied, one may leave the home and abdicate these responsibilities, in the absence of fault on the part of the partner who remains, with impunity and at will. And for what purpose? In this case, plaintiff left for what seems a purely personal motive, "to pursue her own career." She was unwilling, apparently, to abide for even the relatively few years left of her own youngest child's minority; preferring to give priority instead to her own personal interests and being closer to her friends, acquaintances, and peers, in the profession of her choice.

In my view the trial court was clearly justified at least in its finding of abandonment. Therefore this Court has no busi-

ness or authority to substitute its judgment even though it, or another trial judge, might have reached a different conclusion on the same facts. *Nichols* v. *Nichols*, 134 Vt. 316, 317–18, 360 A.2d 85, 86 (1976). It does not solve the problem properly merely by reciting the case for the plaintiff.

It is appropriate at this point to discuss briefly the use by the trial court of the word "abandoned." It raises the question of whether it is used in the generic or dictionary sense, or as a word of legal "art." The word "abandonment" in domestic relations and divorce matters is virtually synonymous with "desertion." Desertion, however, as a statutory and legal term of art is a separate and specific *ground* for divorce. 15 V.S.A. § 551(4). It seems likely, therefore, that the trial court employed "abandoned" in its broader, generic sense, that is, to forsake, leave, or desert, "as a person to whom one owes [a] duty." Webster's New International Dictionary of the English Language 2 (W. Nielson 2d ed. 1955), or "to leave without one's presence, help, or support," The Oxford English Dictionary 2 (Compact Edition 1971), or, again (in the sense of desert), "leaving in willful violation of one's obligations," Webster's New World Dictionary (2d college ed. 1979).

It is noteworthy that the trial court's finding does not state specifically that plaintiff abandoned the defendant, but that she "abandoned the home." This is a much broader concept than the mere living apart provision of § 551(7), which relates only and expressly to the spouse. Leaving or abandoning the *home* embraces minor children and parental duties and obligations, as well as the spouse. But that is precisely what plaintiff did; the evidence upon which that finding is based could not be clearer, notwithstanding the majority holding of insufficiency. The majority must be saying then that fault cannot be based on an abandonment of parental responsibilities in the home. In my view this is as novel as it is unfortunate.

Even if we examine abandonment as a term of legal art, the result should not be different. It adds two elements not generally contained, expressly at least, in the dictionary definitions. First, that it be without good cause; secondly that it be without the consent of the other party. 27A C.J.S. *Divorce* §§ 34–35.

At the outset, of course, abandonment or desertion in this sense applies to *grounds* for divorce, a basis upon which plaintiff could hardly rely. Nevertheless, converting it for use here, as the majority appear to do, the trial court found plaintiff left to pursue her own career. Would this have justified a desertion, had it been offered as a defense to an action based on § 551(4), especially with minor children left behind and the career already established? I suggest the question is rhetorical as applied here and answers itself. Defendant did not consent to, or approve of her departure. Consent cannot be implied from the mere fact that he did nothing to stop her; it would have been a futile act if she wanted to go. This the law does not require of him. "[T]he consent must be something more than a passive acquiescence . . . resulting from a recognition that there is no likelihood that the deserting party can be dissuaded from living apart." 27A C.J.S. *Divorce* § 38(1), at 122.

By ignoring evidence which clearly supports the findings and result reached below, the majority has crossed the borderline of proper appellate review, and has invaded the legislative prerogative of establishing social policy (equal division of assets, coupled with a limitation on parental obligations in those cases where there are children) to be applied hereafter, at least in the absence of minor children, to all "no-fault" cases. In doing so, it has resorted also to an extremely farfetched and transparent exercise in statutory construction, overlooking the fact that there is nothing in the governing statutes that expressly mandates all property must be distributed equally between the parties.

## II.

In addressing this, my second objection, it will be assumed, arguendo only, that the majority are correct in concluding that there is insufficient evidence to support a finding of fault. When the point has been reached in a divorce proceeding at which a fair distribution of the property is to be determined, the trial court must apply the same statutory guidelines irrespective of the presence or absence of fault.

The majority opinion recites, correctly and properly, the substance of 15 V.S.A. § 751, which requires the courts to

consider the three specific factors set forth therein in determining a "just and equitable" distribution of property and thereafter completely ignores these factors as well as failing to examine the record which, in fact, contains ample evidence on each and thus provides requisite support for the findings.

This failure is an unfortunate precedent. Contending litigants, the Bar, and the trial bench, reading the opinion may logically infer that where there is, in fact, a true no-fault situation, the statute is meaningless or at least not applicable, and either an approximate even "split" is the only and necessary answer, or that a disparity of any breadth, standing alone, constitutes reversible error. This is most unfortunate. Section 751 does not even employ the word "fault" [nor for that matter does § 551 (7) ]. It requires consideration of its three factors, regardless of fault, none of which *necessarily* includes fault.

Section 751 is a legislative mandate that no court can properly ignore; for my part I consider it a wise and important enactment. It provides at least some safeguard against those unconscious biases which all human nature is heir to and must constantly be on guard against. The list is long, but includes such familiar concerns as moral concepts, societal and class standards of time and place, religious beliefs, national origins, race, and sex, among others. Also, if applied conscientiously, this statute serves as a preventative measure against an arbitrary even division as the easy way out. For whatever reason, the dissolution of marriage today has become a simple matter, one result of this being to glut court dockets with divorce cases. The factors set forth in this statute are, nevertheless, of the greatest importance to the parties; they are involved in what may well be one of the most important and traumatic incidents of their lives. Once the decision to conclude the relationship has been made by one or both of the marital partners, the distribution of property (with the exception of child custody) becomes the paramount concern. Since the legislature has prescribed the guidelines for the courts through § 751, the parties are entitled to expect the courts will apply its provisions and do so with deliberation and cold judicial neutrality.

Plaintiff left not only the home, but the children as well, to pursue her own career. She was unwilling to put aside her

personal concerns for even the relatively few years remaining until her youngest child reached his majority. There was no evidence or finding that she had been subjected to physical or mental abuse, or that defendant compelled her departure in any way. If these facts do not combine to support and justify a conclusion of fault, surely they speak eloquently to the respective merits of the parties, the first of the three concerns under § 751.

Both parties here had been employed during the greater part of their married life, and both therefore received income. Nevertheless, defendant used his, or the necessary part of it, to support the family, while plaintiff used hers as she wished. There was no "pooling" of income for family purposes, nor established contributions on a percentage basis or otherwise, although she did on occasion purchase things for the home. There was, as defendant put it, "no financial partnership." This is not, of course, a subject for fault, they were free to manage their affairs as they pleased, but again it speaks to their relative merits over the period of the marriage. Not having accumulated savings during the marriage, regardless of the lack of demand on her independent income, she stood by while defendant saved and invested from his income (after paying family expenses), and now asks the court to award her a substantial portion of defendant's assets.

Reviewing the condition in which the parties are situated under the court's order as required by § 751, the second concern of the statute, the law does not contemplate *necessarily* that they be equal, even in the absence of liquidity or a precarious financial position (which is not the case here). This Court has stated:

> Neither the absence of liquidity nor the parties' precarious financial position by themselves justify equal division.
>
> . . . .
>
> The trial court's conclusion concerning the absence of liquidity is a legally insufficient basic reason for ordering equal division of the properties.

*Young* v. *Young*, 134 Vt. 87, 89, 349 A.2d 225, 227 (1975) (emphasis added). This is true in other states as well as

Vermont. See *Tutalo* v. *Tutalo,* 187 Conn. 249, 445 A.2d 598 (1982), a "disparity" case. If it were otherwise, § 751 would serve no purpose.

In the instant case, plaintiff is gainfully employed, in a career of her own choosing in which she is experienced. She lives in a rent free situation which, moreover, pays her additional income because she is in residence. She has no obligation to contribute, even on a percentage basis, to mortgage payments or other carrying costs on either the home or the apartment building; in fact she expressly refused to do so. Nevertheless she demands, and the practical effect of the majority opinion may well produce that result, a half of the proceeds when these properties can be sold. She has been able to accumulate and invest her own money to the extent of several thousand dollars since leaving the home. There is not here the case of the wife who gave up employment to devote her life to the home and is left now, years later, with no marketable skills. She will be in no sense either impoverished or without employment. She is more than merely employable as was the appellant in the Connecticut case, *Tutalo* v. *Tutalo, supra;* she is employed.

Beyond her salary, plaintiff would be entitled, under the trial court's order, to receive one-half of the proceeds realized from the sale of the home. At the time of trial, plaintiff testified the equity in the property to be approximately $95,000.00. In the meantime, of course, that equity has been increasing as defendant, out of his own pocket, and with no contributions from the plaintiff (or without any credit to him based on those payments), continues to pay off the mortgage as he is required to do under the order. Likewise, the court ordered defendant to pay all other expenses connected with this property, again without any contributions from the plaintiff. Further, the household goods, furniture and fixtures in the home, except as the parties may otherwise agree, are to be sold, with half the proceeds payable to plaintiff.

It seems probable that if the order of the trial court was to be affirmed, plaintiff would receive something in excess of $50,000.00 as a minimum; that is a lot of money, especially when considered in conjunction with her steady employment and salary. It is true that defendant might receive a substantially larger amount based primarily on one item which is

discussed hereafter, but the test under the statute as far as she is concerned is how *she* will be left. The majority have expanded that test to add a "comparison" factor as a matter of law. Such an interpretive liberty is not justified by the express language of the statute; again it is the establishment of social policy by this Court—it is judicial legislation, not required to render § 751 fully operative and enforceable in accordance with its provisions.

The third element to which the court must give consideration in assigning assets is "the party through whom the property was acquired." It is beyond question, I think, that the disparity which so concerns the majority here results primarily, and probably exclusively, from the value of the apartment house, purchased by, and standing in the sole name of, the defendant. The evidence is uncontroverted, moreover, that defendant made the downpayment of approximately $32,000.00 out of his own personal savings and investments, that plaintiff contributed nothing, and in fact she "wanted no part of it" at the time he acquired it, although she certainly does now. She wants to force its sale, at a loss to defendant, the latter making mortgage and all other necessary payments in the meantime, with no contributions from her. She expects half the proceeds nevertheless to be awarded to her without any credit allowed to defendant for all of the interim carrying costs he will have paid from his own pocket by the time a sale can be effected.

Assuming the source-of-acquisition concern under the statute is to be given any real meaning here, especially when it is placed in balance with the other two statutory requirements as applied to the record facts and findings, the trial court was well within the scope of its broad discretionary powers in awarding the apartment house to the defendant, the party through whom it was acquired. The fact that the disparity results primarily from this grant is irrelevant in the light of the other two concerns as they are here, except on a purely comparison basis to which the majority gives such unwarranted weight regardless of the fact that neither a comparison nor equality are required by law in any case.

I do agree with the majority that the trial court erred in finding there was no evidence from which it could determine the nature and value of the savings and investments which

each hold independently of the other; the evidence is in fact reasonably clear. Nevertheless to say this is reversible error is to ignore the evidence in support of the only proper findings the court could have made by giving it even minimum weight. It is not conflicting as to the assets of either party. Whatever effect the value of these assets, awarded to the party having ownership, might have on the "disparity" is no more meaningful than is the apartment house in this case. It is without significance except on a comparison basis, which, in turn, is not warranted nor required by law.

If this case must be reversed, it is to be hoped that, at the very least, due consideration will be given to all the elements of § 751, and recognition afforded, and some credit given for whatever costs defendant has had to make since the separation to maintain any of the property which is to be sold, and to support the children during whatever time remained of their minority. In my view, plaintiff should not expect to reap all of the benefits while assuming none of the interim burdens, on a percentage basis or otherwise (especially since both parties pursued independent employment for many years, during which time plaintiff accumulated no savings although the demands on her income for family purposes was negligible, while defendant did effect savings, a major part of which plaintiff now demands); any other course would certainly be unjust and inequitable. Nevertheless, I believe strongly that the judgment should be affirmed. I would have done so.