**Vermont Agency of Transportation v. Francis Sumner**

[460 A.2d 446]

No. 476-81

Present: **Billings, Hill and Underwood, JJ., and Daley and Larrow, JJ. (Ret.), Specially Assigned**

Opinion Filed March 28, 1983

*John J. Easton, Jr.,* Attorney General, and *Richard M. Finn,* Assistant Attorney General, Montpelier, for Plaintiff-Appellant.

*Mark L. Sperry* and *Donald C. Arbitblit* of *Langrock Sperry Parker & Wool,* Middlebury, for Defendant-Appellee.

**Underwood, J.** The plaintiff, the Vermont Agency of Transportation (Agency), pursuant to 24 V.S.A. § 2281, sought to enjoin the defendant, Francis Sumner, from establishing, operating or maintaining a junkyard, alleging violations of 24 V.S.A. § 2242, which requires a license to operate a junkyard, and 24 V.S.A. § 2257, which requires screening of junkyards.

The trial court found that the Agency proved the existence of a junkyard on the defendant's property, that it was visible from two public highways, and that he had failed to comply with the licensing and screening requirements. However, it concluded that these facts were not sufficient to establish that the defendant was in violation of § 2242 or § 2257. The Agency appeals from this decision, arguing that the above facts were sufficient to support its prayers for relief. We disagree and affirm.

■ There is no language in § 2242 nor in § 2257 which requires the Agency to prove that a junkyard constitutes a public

danger or a nuisance before its owner can be compelled to obtain a junkyard license and comply with the screening requirements. Nonetheless, the trial court interpreted these statutes as imposing this requirement on the Agency. It held, in the instant case, that the Agency failed to show the defendant's junkyard constituted a public danger or a nuisance, and that therefore he cannot be found liable for failing to comply with § 2242 or § 2257.

Although we agree with the trial court's holding that the defendant did not violate § 2242 or § 2257, we disagree with the reasoning used by it to reach such result. We find that the lower court erroneously stated the law when it ruled that § 2242 and § 2257 have a public danger or nuisance requirement. However, "[w]e will affirm a judgment which is correct, even if the grounds stated in support of it are erroneous." *Pike Industries, Inc.* v. *Middlebury Associates,* 140 Vt. 67, 71, 436 A.2d 725, 727 (1981). In this instance we affirm the trial court for the following reason.

The trial court found that the defendant was not engaged in the junkyard business. It characterized his activity as that of maintaining a private automobile graveyard of some thirteen unregistered automobiles, varying in vintage from 1947 to 1971. It found that the defendant robbed this graveyard of auto parts from time to time to repair one or more of the vehicles he was using in his business of trucking sawdust and lime.

Upon review of the junkyard law, 24 V.S.A. §§ 2241–2264, and taking each section in pari materia with the others, as we must, *Villeneuve* v. *Town of Underhill,* 130 Vt. 446, 453, 296 A.2d 192, 197 (1972), we hold that the legislature intended the licensing and screening requirements to apply only to persons engaged in the active operation of a junkyard *business.* Our holding is supported by the legislative mandate that: "A person shall not operate, establish or maintain a junkyard unless he . . . [h]olds a license *to operate* a junkyard *business."* (Emphasis added.) 24 V.S.A. § 2242(2). Furthermore, the relevancy of the screening requirement makes little sense unless it is intended to apply to an operating junkyard business, viz:

Junkyards shall be screened by a fence or vegetation which effectively screens it from view from the highway, *and have a gate which shall be closed, except when the yard is in operation.* (Emphasis added.) 24 V.S.A. § 2257(a).

The legislature rarely requires licensing of activities conducted on one's premises unless such person is engaging in some business or profession. Compare, for example: 9 V.S.A. § 3061 (license to operate an inn, hotel or restaurant); 9 V.S.A. § 3862 (license to carry on the business of pawnbroker); 10 V.S.A. § 2623 (operator of portable saw mill must obtain license and register his mill); 6 V.S.A. § 762 (license to carry on the business of livestock dealer); 6 V.S.A. § 3196 (license to operate a slaughtering plant); 24 V.S.A. § 2232 (license to maintain or operate a trailer or mobile home park); 18 V.S.A. § 2003 (license to operate a nursing home); and 26 V.S.A. § 1391 (license to practice medicine and surgery).

█ Since § 2242 and § 2257 only apply to junkyard businesses and the defendant was not engaged in such, we hold that he did not violate said statutes.

*Affirmed.*

**Billings, J.,** concurring. The majority opinion seeks to construe a poorly drafted and ambiguous set of statutes in order to render them both reasonable and administerable. However, while I agree with the Court's holding that the various licensing and screening requirements of 24 V.S.A. §§ 2241–2264 can only apply to persons engaged in the active operation of junkyard businesses, I cannot subscribe to its summary analysis, for it ignores the plain meaning of the statutes.

As presently written, the statutes regulating junkyards make no distinction between a junkyard business and, as in this case, a noncommercial property which happens to contain materials falling within the statutory definition of junk. By the statutes' plain language, each is equally subject to the regulatory scheme. This is made clear in § 2241, which sets out the controlling definitions:

(5) "Junk" means old or scrap copper, brass, iron, steel and other old or scrap or nonferrous material, including but not limited to rope, rags, batteries, glass, rubber, debris, waste, trash or any discarded, dismantled, wrecked,

scrapped or ruined motor vehicles or parts thereof.

. . . .

(7) "Junkyard" means any place of outdoor storage or deposit, whether in connection with a business or not, which is maintained, operated or used for storing, keeping, processing, buying or selling junk . . . .

24 V.S.A. § 2241(5) and (7).

So defined, a junkyard may exist "in connection with a business or not," and a property owner whose yard contains any materials listed in 24 V.S.A. § 2241(5) is a junkyard owner fully subject to state regulation. Nor are these regulations merely perfunctory. A junkyard owner must: obtain a certificate of location approval, 24 V.S.A. §§ 2242(1), 2251; attend and present evidence at a hearing, 24 V.S.A. §§ 2252–2254; pay application and licensing fees, 24 V.S.A. §§ 2256–2263; satisfactorily screen such a yard from view of highway travelers, 24 V.S.A. § 2257; and finally, secure a license to operate and maintain a junkyard business, 24 V.S.A. § 2242(2) and 2261–2262.

Defendant maintains that this statutory scheme is unconstitutional, arguing *inter alia* that requiring a nonbusiness entity to obtain a junkyard business license, site approval, and screening represents an unreasonable and inappropriate exercise of the state's police power. The majority opinion, which ignores the clear statutory language, failed to explore this contention. However, since the statute plainly extends to one in defendant's position, the constitutional argument must be reached.

The party challenging a statute on the basis of unconstitutionality bears a heavy burden of proof: every presumption is to be made in favor of constitutionality, *Lomberg* v. *Crowley*, 138 Vt. 420, 424, 415 A.2d 1324, 1327 (1980) ; *Re Montpelier & Barre Railroad*, 135 Vt. 102, 103, 369 A.2d 1379, 1380 (1977), and such legislative enactments "will be given reasonable construction, consistent with constitutional standards, unless the language of the statute itself plainly forecloses it." *Re Montpelier & Barre Railroad, supra*, 135 Vt. at 103–04, 369 A.2d at 1380 (citing *In re Delinquency Proceedings*, 129 Vt. 185, 188–89, 274 A.2d 506, 509 (1970)). With the above rules in mind, I proceed to analyze the challenged statutes.

It is beyond dispute that junkyard businesses "are the proper subject of statutory or ordinance regulation under the [state's] police power." *Vermont Salvage Corp. v. Village of St. Johnsbury*, 113 Vt. 341, 347, 34 A.2d 188, 192 (1943) (citing *Village of St. Johnsbury v. Aron*, 103 Vt. 22, 26, 151 A. 650, 652 (1930)). See also Annot., 45 A.L.R.2d 1391 (1956 & Supp. 1980). The rationale advanced for state regulation includes the tendency of such places to attract stolen goods, inflammable materials and disease-laden substances, the resultant health hazards to the general public, and the added danger that children may be tempted to stray too near. *Vermont Salvage Corp., supra*, 113 Vt. at 348, 352, 34 A.2d at 193, 195. These considerations bear a real and substantial relation to public health, safety and morals, and thus constitute a legitimate basis for the exercise of the police power. *State v. Solomon*, 128 Vt. 197, 199, 260 A.2d 377, 379 (1969).

However, it does not follow that noncommercial, privately owned lots which contain some items statutorily defined as "junk" necessarily pose the same threat to public safety, health or welfare. In fact, in this case the court below specifically found that defendant's use of his property presents none of the hazards usually attributable to junkyard businesses. This is not to say that nonbusiness property cluttered and strewn with scrap metal, debris, waste and trash is wholly beyond the reach of state regulation. Clearly the state's police power may properly be exercised to prohibit the use of land in a manner injurious to the people. *Vermont Salvage Corp., supra*, 113 Vt. at 354, 34 A.2d at 196; see also 24 V.S.A. §§ 2291(12), (13) and (14). See generally *Napro Development Corp. v. Town of Berlin*, 135 Vt. 353, 376 A.2d 342 (1977). "Nevertheless the exercise of this (police) power must be reasonable and whether it is reasonable in the particular instance is a question ultimately for the court." *Vermont Salvage Corp., supra*, 113 Vt. at 347, 34 A.2d at 192 (citing *Village of St. Johnsbury, supra*, 103 Vt. at 26, 151 A. at 652).

A statutory scheme which requires noncommercial property owners to comply with regulations enacted to govern commercial junkyards, up to and including requiring such owners to obtain a business license, is untenable and unreasonable. There is no "obvious and real connection between [these requirements] and . . . the [purpose] for the application of the

police power": safeguarding the public against unhealthful and injurious land use. *Vermont Salvage Corp., supra,* 113 Vt. at 351, 34 A.2d at 192. Any legitimate evils which the state seeks to prevent must be reached in a less capricious and arbitrary manner, for where the police "power is invoked through means or methods which are unreasonable, inappropriate [or] oppressive . . . , constitutional limitations are transgressed, individual rights are invalidated and the action is void." *Beecham* v. *Leahy,* 130 Vt. 164, 172, 287 A.2d 836, 841 (1972) (citing *State* v. *Morse,* 84 Vt. 387, 394, 80 A. 189, 191–92 (1911)).

For these reasons I would declare that that portion of 24 V.S.A. § 2241(7) which includes nonbusiness entities within the definition of junkyard is void, and that the statutory scheme as written may constitutionally regulate only junkyard businesses.