## CIRCUIT COURT OF WARREN COUNTY

Commonwealth of Virginia

 v.

Jimmy Wyatt Scott

February 12, 1986

Case No. R85007636

**By JUDGE HENRY H. WHITING**

The Court is required to rule upon a motion to set aside a verdict finding the defendant guilty of operating a junkyard in violation of Virginia Code Section 33.1-348.

The thrust of the argument on that motion is that the Commonwealth has not shown that Mr. Scott *sold* any of the junk stored on his property, citing a Vermont case, *Vermont Agency of Transportation v. Sumner*, 460 A.2d 446 (Vt. 1983). In that case the Court denied an injunction sought by the state agency seeking to enjoin the defendant, who was storing junk on his property but was not selling any of it. The agency contended that he did not have a state-required license and the activity was thus enjoinable but the Court said that no license was required unless the person was engaged in the active operation of a junkyard business, the statute providing in part: "A person shall not operate, establish or maintain a junkyard unless he . . . [h]olds a license to operate a junkyard business. 24 V. S. A. Section 2242(2)." *Id.*, at 447.

It is claimed that the Virginia statute can only be construed to apply if a business is being run where the junk is stored. The defendant reads the statute conjunctively and not disjunctively as the Virginia statute was enacted. The Virginia statute says that a "junkyard is an establishment *or* place of business which is maintained,

operated *or* used for storing, keeping, buying *or* selling junk." (Emphasis added.) Section 33.1-348. *See Field, infra* at 1137-1138. Thus the statute is reasonably interpreted as prohibiting one from maintaining an establishment for storing or keeping junk, with no requirement that it be a place of business since that is an alternate to the word "establishment" and obviously means something other than a place of business. I construe the word "establishment" to mean any sort of a place where an activity (storing junk) is going on even though not a business.

A constitutional argument is also made. A concurring Justice in *Sumner* held that the statute proscribed any operation of a junkyard whether as a business or not but as construed it was unconstitutional as having no reasonable relation to the public welfare because a non-commercial junkyard did not pose the same problems as a commercially operated junkyard of "the tendency . . . to attract stolen goods and flammable materials and disease laden substances, resultant health hazards to the general public, and the added danger that children may be tempted to stray too near." *Id.*, at 449.

Two cases are cited, candidly and commendably, by the defendant, which hold to the contrary on the constitutional issue, sustaining state statutes which prohibited junkyards even though operated as businesses. *Field v. Area Plan Commission of Grant County, Indiana,* 421 N.E.2d 1132 (Ind. App. 1981), and *Board of County Commissioners of the Boulder County v. Thompson,* 493 P.2d 1358 (Col. 1972). *Thompson* specifically pointed out that the Colorado statute authorized zoning regulations designed for the purpose of "health, safety, morals, convenience, order, prosperity and welfare of the present and future inhabitants of the State but also, among other purposes, the classification of land uses and distribution of land development and utilization, protection of the tax base, fostering of the State's agricultural and other industries, and the protection of urban and non-urban development." *Id.*, at 1362. The Virginia enabling statute in question is equally broad in authorizing such a statute to promote "the public safety, health, welfare, convenience and enjoyment of public travel, to protect the public investment in public highways, and to preserve and enhance the scenic beauty of lands bordering the public highways."

14

*Field* also denied the contention of arbitrary and unreasonable classification and a denial of due process. Recognizing that zoning might control the use of real estate but only if it has a real and substantial relation to the public health, safety, morals or general welfare, the Court held that the prohibition against the use of residential property in residential zones for the collection and storage of junk did bear a reasonable and substantial relation to public health and public welfare. The Court believes that Virginia would find a substantial relation to public safety, health, welfare, convenience and enjoyment of public travel in the prohibition of junkyards, whether publicly or privately owned, within the view from its highways.

For the reasons aforesaid the Court overrules the motion to set aside the verdict and directs the Commonwealth's Attorney to prepare the appropriate Order, reciting the defendant's objection.