**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

|                                      |     |                          |
|--------------------------------------|-----|--------------------------|
|                                      | }   |                          |
| **Appeal of Taylor's Automotive, LLC** | }   | **Docket No. 42-3-04 Vtec** |
|                                      | }   |                          |
|                                      | }   |                          |

## Decision and Order on Pending Motions

Appellant Taylor's Automotive, LLC[1] (Appellant) appealed from the decision of the Zoning Board of Adjustment (ZBA) for the Town of Barton (Town) dated February 12, 2004, which denied Appellant's appeal of a Notice of Violation for operating a prohibited junkyard, issued by the Town's Zoning Administrator on December 5, 2003.[2] Appellant is represented by Charles D. Hickey, Esq.; the Town as Appellee is represented by Glenn C. Howland, Esq. Both parties have filed motions for summary judgment, and Appellant has filed a motion to dismiss the Town's pleadings, and to deem Appellant's statement of material facts uncontested.

## Factual Background

The following facts are undisputed unless otherwise noted:

1. On May 24, 2001, Francis and Helene Taylor purchased a parcel of land from Amyot's, Inc., improved with a building. The property is approximately twelve acres in area and located on U.S. Route 5 in Barton, Vermont.

2. Prior to Taylors' purchase of the parcel, Amyot's, Inc. leased the parcel to Collins Farm and Garden, Inc. (Collins), a farm tractor and equipment dealership. Collins' lease began around 1992.

---

[1] Appellant is incorporated under the name "Taylor's Automotive, Inc.," rather than "LLC." We retain the use of "LLC" for consistency with the various pleadings in this case. See Undisputed Fact ¶12, below.
[2] The parties have not submitted to the Court the Zoning Administrator's Notice of Violation. The Court has therefore characterized the alleged violation as a "prohibited junkyard" based upon the parties' representations.

3.     The back field of the parcel (back field) was used by Collins to store tires, barrels, inoperable farm machinery and motor vehicles, including a pickup truck, a school bus, and two telephone vans.

4.     Prior to Collins' lease of the parcel, Amyot's, Inc. operated a farm equipment dealership on the parcel, beginning around 1973.

5.     Amyot's, Inc. used the back field to store material including old machinery, vehicles, vehicle parts, and an inoperable school bus with parts and used tires in it.  The number of vehicles and the area this collection encompassed is unclear from the parties' representations.

6.     Amyot's, Inc. purchased land, including the back field, from Carl's Equipment, Inc. in either 1973 or 1974.

7.     The Taylors and Amyot's, Inc. arrived at an oral agreement in the course of the sale of the parcel that Amyot's, Inc. would clean up the property by removing the material from the back field.

8.     On May 25, 2001, the Taylors took possession of the parcel from Amyot's, Inc.

9.     At the time the Taylors took possession, a private salvage company was in the process of removing the material from the back field.  The salvage company stopped working on the site in the last week of May, 2001, after the Taylors took possession.

10.     In late August of 2001, Amyot's, Inc. burned, in the back field, an old wooden manure spreader, pallet crates, and the wooden portions of an old forage wagon.  It appears from the parties' competing statements of material facts that the parties agree that by August, 2001, the material Amyot used and stored on the back field was completely removed.

11.     The Taylors immediately began operating an automobile sales, repair, and towing business on the property.

12.     In May of 2002 the Taylors incorporated their business under the name Taylor's Automotive, Inc.

13.     The Taylors began using the back field for storage of vehicles shortly after Amyot's burned the wooden material.  Some vehicles Taylor brought on to the property were awaiting repairs, some were being held pending payment or authorization to make repairs, some were for use in demolition derbies, and some were abandoned and towed to the site at the request of Taylor's Automotive customers, including State or Town entities.

14.     Approximately half of the total vehicles stored by Appellants on the back field were unregistered at any given time.

15.     On December 3, 2003, the Town's Zoning Administrator issued a Notice of Violation to Appellant, which Appellant appealed to the Town's ZBA.

16.     On January 17, 2004, the ZBA conducted a site visit and found forty-two vehicles on the back field, approximately half of which were unregistered.

17.     On February 12, 2004, the ZBA denied Appellant's appeal of the December 3, 2003 Notice of Violation.  Appellant thereafter filed a timely appeal with this Court of the ZBA's denial.

## Discussion

Appellant argues that the use of the back field as a junkyard[3] is grandfathered as a pre-existing nonconforming use and further that the Town's Notice of Violation is barred by the fifteen-year statute of limitations established by 24 V.S.A. former § 4496(a), now amended and codified at § 4454(a).  The Town counters that Appellant has impermissibly expanded the nonconforming use by introducing new material and by doing do in a quantity that exceeds prior levels.  The Town further asserts that that Appellant either abandoned the nonconforming use or replaced it with a conforming

---

[3] Appellant denies that the use is as a junkyard, but assumes it for purposes of this motion

use.[4] Lastly, the Town asserts that the junkyard was unlawful even before the zoning ordinance was enacted, and thus the use is not a "nonconforming use" as defined in the former 24 V.S.A. § 4408(a)(1), now amended and codified at § 4412(7).[5] Appellant also requested that the Town's motions be "dismissed" as untimely and that Appellant's statement of facts be deemed uncontested, as the Town did not comply with the requirements of V.R.C.P. 56(c)(2).

We need not reach Appellant's motion to dismiss, as material facts are in dispute necessitating the denial of both pending motions for summary judgment. We note for the edification of the Town's attorney that the failure to file motions and responses in a timely fashion may require this Court to disregard potentially helpful legal reasoning. We trust that all parties will heed this warning; we now move to a review of the legal issues raised by the parties' motions.

Turning to Appellant's request that its statement of facts be deemed uncontested, Appellant correctly asserts that the Town did not comply with the V.R.C.P. 56(c)(2), which requires that the opposing party's filing include "a separate, short, and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried." While the Town did file a "statement of facts not in dispute," it failed to identify which, if any, of Appellant's factual representations are in dispute. In this situation the rules are clear. "All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." V.R.C.P. 56(c)(2). Pursuant thereto, Appellant's statement of material facts is hereby deemed uncontroverted for purposes of the Court's consideration of the pending motions.

---

[4] Barton Zoning Ordinance § 402.03 prohibits the reestablishment of a nonconforming use under two circumstances: (1) if it has been "discontinued or terminated for a period of two years" or (2) if it "has been changed to, or replaced by, a conforming use."
[5] See footnote 5, supra, and accompanying text.

Appellant's predecessor-in-interest, Collins, used the back field to store material fitting the statutory definition of "junk," 24 V.S.A. § 2241(5). If, as appears to be the case, the pickup truck, school bus, and two telephone vans stored on the back field by Collins were unregistered for more than 90 days, they fit the statutory definition of "junk motor vehicles," 24 V.S.A. § 2241(6). Therefore, Collins used the back field as a "junkyard," as that term is defined in the current zoning ordinance at § 5.02, and in 24 V.S.A. § 2241(7). There are insufficient facts in the record to determine whether the junkyard use goes back more than fifteen years from the December 3, 2003 Notice of Violation, and whether such use is similar enough to Appellant's use as to defeat the Town's Notice of Violation.

We next turn to the Town's argument that the junkyard use does not qualify as a non-conforming use as defined in the former 24 V.S.A. § 4408(a)(1). The former § 4408(a)(1) defined "nonconforming use" as "a use of land or a structure which does not comply with all zoning regulations where such use conformed to all applicable laws, ordinances and regulations prior to the enactment of such regulations." This definition has been amended and codified in the "Definitions" section of the new statute, at 24 V.S.A. § 4303(15),[6] rather than appearing in § 4412(7), the new statute's version of the former § 4408.

The Town points out that junkyard operators were required to obtain a license under 24 V.S.A. former § 2062, which was enacted in 1960 and was superseded in 1969 by 24 V.S.A. § 2242. Section 2242 remains in effect and requires both a certificate of approval for the junkyard location and a license to operate it. The Town argues that since no such license exists, the junkyard use did not comply with all applicable laws

---

[6] 24 V.S.A. § 4303(15) (2004) defines "nonconforming use" as "use of land that does not conform to the present bylaws but did conform to all applicable laws, ordinances, and regulations prior to the enactment of the present bylaws, including a use improperly authorized as a result of error by the administrative officer."

prior to the enactment of zoning in 1986, and thus is not a protected non-conforming use.

In Vermont Agency of Transp. v. Sumner, 142 Vt. 577 (1983), our Supreme Court held that the licensure requirements of § 2242 applied only to junkyard businesses, id. at 580. The defendant in Sumner did not operate such a business, but rather maintained "a private automobile graveyard" and "robbed this graveyard of auto parts from time to time," id. at 579. In 1984, in the wake of the decision in Sumner, the Vermont Legislature amended § 2242 by expanding the definition of "junkyard" to include outdoor storage of junked vehicles "not in connection with a business." See Town of Sandgate v. Colehamer, 156 Vt. 77, 89 (1990).

If Appellant's predecessors-in-interest, Collins and Amyot's, Inc., were operating a junkyard business without a license, then the pre-zoning junkyard use would not have complied with all applicable laws in effect at the time, and therefore the junkyard use would not be a lawful nonconforming use as the term is defined in the former statute, 24 V.S.A. § 4408(a)(1). Even if the former owners of the parcel were not operating a junkyard business, the junkyard use would not have complied with § 2242 beginning in 1984, two years prior to the enactment of the Town's Zoning Ordinance. Thus the junkyard would fail to meet the former § 4408 definition of nonconforming use because it would not have "conformed to all applicable laws, ordinances and regulations prior to the enactment of [zoning]." In either case, the zoning violation would have first occurred in 1986 when zoning went into effect, more than fifteen years before the December 5, 2003 Notice of Violation. The Notice of Violation would therefore be time-barred under 24 V.S.A. former § 4496(a), now amended and codified at § 4454(a), unless Appellant's use of the back field has expanded, or is so distinct from its use by Appellant's predecessors-in-interest, that it constitutes a new violation. These

fact-dependent questions are the proper subject of a merits hearing, as facts necessary to answer these questions are in dispute and are not in the record as it now stands.

In particular, evidence needs to be presented at the merits hearing so that the Court may make a determination on the following two legal issues:

1.     To what extent was Appellant's use of the property as of the Notice of Violation similar to or different from the prior use, to the extent such prior use was a lawful, pre-existing, nonconforming use?   Because the Appellant asserts, as an affirmative defense, that it is continuing a lawful, pre-existing, non-conforming use, Appellant will carry the initial burden of proof at trial in establishing the specific parameters of that prior use.  V.R.C.P. 8(c).[7]

2.     To the extent that Appellant is continuing a lawful, pre-existing, nonconforming use, to what extent has such use been expanded beyond the scope of the prior use?  In the event that Appellant fulfills its burden of proof as to question #1, above, the Town will carry the initial burden of proof on this evidentiary issue regarding expansion.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the pending motions for summary judgment are both **DENIED**, and Appellant's motion to deem Appellant's statement of material facts uncontested is **GRANTED**.

In anticipation of the trial, the Court requests that the parties discuss the possibilities for settlement through mediation and advise the Court on whether such efforts prove successful.  Failing such a settlement, the Court anticipates that the trial

---

[7] See also <u>Town of Shelburne v. Kaelin</u>, 136 Vt. 248, 251 (1978) ("V.R.C.P. 8(c) provides that 'a party shall affirmatively set forth and establish . . . (any) matter constituting an avoidance or affirmative defense.' The defense of nonconforming use is in the nature of a confession and avoidance, the pleader confessing that his use violates the current zoning regulations, but avoiding the complaint with the new matter that the use was lawful prior to the regulations. Thus, appellee had the burden of pleading and proving his defense of prior nonconforming use").

will require no more than one day of hearing, unless the parties advise the Court Manager otherwise by Tuesday, December 27, 2005.  At this juncture, the Court anticipates that the trial could be scheduled for sometime between Monday January 30 and Thursday, February 16, 2006 (February 2nd, 3rd, 8th, & 15th having already been scheduled for other merits hearings).  All parties shall advise this Court no later than Tuesday, December 27, 2005, as to dates they or their witnesses would be unavailable during this time period.

Done at Berlin, Vermont, this 16th day of December, 2005.

_____
Thomas S. Durkin, Environmental Judge